Birchel L. CARSON, Appellant,

v.

U. S. DEPARTMENT OF JUSTICE et al.

No. 79–1871.

United States Court of Appeals, District of Columbia Circuit.

Argued May 29, 1980.

Decided Aug. 27, 1980.

Katherine A. Meyer, Washington, D.C., with whom David C. Vladeck, Washington, D.C., was on brief for appellant.

Sylvia A. Royce, Asst. U.S. Atty. with whom Charles F. C. Ruff, U.S. Atty., John A. Terry, Michael W. Farrell and Robert E. L. Eaton, Jr., Asst. U.S. Attys., Washington, D.C., were on brief for appellees.

Before WRIGHT, Chief Judge, and WALD and MIKVA, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Birchel Carson appeals an order of the district court entered on cross–motions for summary judgment under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976). That order denied Carson access to materials which were withheld by the United States Parole Commission (Parole Commission) in response to Carson's request for access to his Parole Commission files.

The primary issue on appeal is the narrow but important question whether a presentence report is an agency record within the meaning of the FOIA. For the reasons given in Part I of this opinion we conclude that the presentence report is such a record and therefore vacate the contrary judgment entered in the district court. Our holding in this respect is no broader than the narrow question presented; we decide only that the presentence report is an agency record within the meaning of the FOIA. We do not decide, nor even suggest that the FOIA mandates disclosure of all or some part of the presentence report; these questions we leave to the district court on remand.

The other issues presented by this appeal are treated in Part II of this opinion. As we there explain, the district court's order denying FOIA access to other withheld materials is affirmed in several respects; but

because we find the withholding of a few items to have been inadequately justified under controlling FOIA precedent, we vacate and remand certain other aspects of the judgment.

## I. THE PRESENTENCE REPORT

That the Parole Commission is an "agency" governed by the FOIA is clear.[1] However, the presentence report is prepared not by the Parole Commission but by the probation service of the United States courts,[2] and the United States courts are not agencies within the meaning of the FOIA.[3] The Department of Justice maintains that the non–agency origin of the presentence report determines its status under the FOIA.[4] The Department argues that transmission of the report from the probation service to the Parole Commission does not convert the report into a "record" of the Parole Commission for purposes of the FOIA.[5]

1. 18 U.S.C. § 4218(a) (1976):
 For purposes of the provisions of chapter 5 of title 5, United States Code, other than sections 554, 555, 556 and 557, the [United States Parole] Commission is an "agency" as defined in such chapter.

2. Fed.R.Crim.P. 32(c).

3. 5 U.S.C. § 552(e) (1976); *id.* § 551(1).

4. The United States Parole Commission is "an independent agency in the Department of Justice." 18 U.S.C. § 4202 (1976). Carson's FOIA request was directed to the United States Parole Commission, Joint Appendix (J.A.) 2, but his complaint joined as defendants both the Department of Justice and the Parole Commission, J.A. 3. Both the Department and the Parole Commission answered the complaint and joined in the motion for summary judgment whose granting is here appealed. Unless the context indicates otherwise, references to "the Department" throughout this opinion are intended to denote both the Department and the Parole Commission.

5. The Division of Probation of the Administrative Office of the United States Courts has taken the same position:
 Federal courts are not bound by the requirements of the FOIA. Furthermore, neither are Federal probation offices. As officers of the courts, they perform several major functions, one of which is the preparation of presentence reports. *Fed.R.Crim.P.* 32(c). Presentence reports are thus without the coverage of the FOIA. 5 USC 551(1)(B), 552(e).

(1970, Supp. IV, 1974). Consequently, even though a presentence report may later be retained in the files of the Bureau of Prisons, it retains its status as a court document *not* discoverable under the FOIA. See *Cook v. Willingham*, 400 F.2d 885 (10th Cir. 1968).[3]

 [3] While it is true that probation officers perform various duties as requested by the United States Parole Commission and thus are "agents" of the Commission for some purposes, such as parole supervision or post-release planning, 18 USC 3655, as amended by Pub.L.No. 94–233, Sec. 14 (Mar. 15, 1976); 18 USC 4203(a)(4) (Mar. 15, 1976), the preparation of presentence reports is not one of those duties. Presentence reports are used by the Bureau of Prisons and Parole Commission because the courts have permitted such use. The reports are not converted, however, by such use into documents of "agencies" subject to the prescriptions of the FOIA. Access to such reports at the time of parole release hearings, when available to the Parole Commission, has recently been given inmates by the Parole Commission and Reorganization Act, 18 USC 4207, 4208 (Mar. 15, 1976). Nothing in that Act, however, alters the fact that the presentence report is a court document which is not within the purview of the FOIA. It cannot be obtained under the FOIA by an inmate or parolee from the Parole Commission.
Division of Probation, Administrative Office of the United States Courts, Pub.No. 105, The Presentence Investigation Report 27 (1978).

A. *The FOIA and the Presentence Report in the Courts*

The first reported decision to address the issue of presentence report availability under the FOIA was *Cook v. Willingham*, 400 F.2d 885 (10th Cir. 1968). In that case a motions panel of two judges of the Tenth Circuit issued a three paragraph *per curiam* opinion summarily affirming a district court decision denying access under the FOIA to a presentence report. In agreeing with the lower court's determination that "the presentence report [was] made for the use of the sentencing court and thereafter remains in the exclusive control of that court despite any joint utility it may eventually serve," *id.*, the *Cook* court relied upon two factors: first, that the sentencing court had absolute discretion to grant or deny access to the report, *id.*; and second, that the FOIA did not apply to the courts. *Id.* *Cook* has been approved in the circuit where it was decided[6] and has been followed by other courts.[7] No subsequently decided case of which we are aware has disagreed with *Cook*'s holding. Furthermore, *Cook* was cited with approval by the majority of a panel of this court in *Goland v. Central Intelligence Agency*, 607 F.2d 339, 346 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980), holding that a stenographic transcript of a "secret" Congressional hearing in the custody of the CIA was not an agency record under the FOIA.

B. *The FOIA's Agency Record Requirement*

The majority in *Goland*, in an opinion by Judge Wilkey, decided that the FOIA's applicability to a document generated by an expressly exempted non–agency (in that case the Congress) would be determined by a standard of control rather than possession:[8]

> Whether a congressionally generated document has become an agency record, . . . depends on whether under all the facts of the case the document has passed from the control of Congress and become property subject to the free disposition of the agency with which the document resides.

607 F.2d at 347. Noting that the Congress retained unbridled discretion to conduct secretly the proceedings recorded in the document at issue, *id.* at 346, that the Congress had manifested an intent to preserve the secrecy of *those* proceedings, *id.* at 347, and that the document had been released to the agency for limited purposes, the *Goland* majority agreed with the district court's conclusion that the document " 'remain[ed] within the control of Congress,' " *id.* at 345 (*quoting* the district court), and denied access under the FOIA. *Id.* at 348.

However, when the control test adopted by the *Goland* majority was subsequently applied to different sorts of congressionally generated material, a strikingly different result was reached. In *Ryan v. Department of Justice*, 617 F.2d 781, this court held, again in an opinion by Judge Wilkey, that United States Senators' responses to Justice Department questionnaires concerning the procedures they used for selecting and recommending potential nominees for federal judgeships were agency records subject to the FOIA. In that case the court reasoned:

> We do not decide at this point whether plaintiff's FOIA claim can be defeated by an opportunity to inspect the documents from the Bureau of Prisons at FCI, Danbury, or whether the pre–sentence report is exempt as a court document, despite its availability prior to sentencing, Fed.R.Crim.P. 32(c)(3), and its disclosure to agencies of the executive branch.
>
> *Id.* at 828 n.4.

---

6. *United States v. Dingle*, 546 F.2d 1378, 1381 (10th Cir. 1976) (Jencks Act disclosure).

7. *Smith v. Flaherty*, 465 F.Supp. 815, 819 (M.D. Pa.1978) (alternate holding); *Blue v. Bureau of Prisons*, 570 F.2d 529 at 532–33 (5th Cir.1976). In a recently issued decision holding that the Office of the Pardon Attorney is an "agency" for purposes of the FOIA, *Crooker v. Office of the Pardon Attorney*, 614 F.2d 825, 828 (2d Cir. 1980), the Second Circuit expressly reserved to the district court on remand the question of presentence report disclosure under the FOIA:

8. *Id.* at 346–47. *See Ryan v. Dep't of Justice*, 617 F.2d 781, 785–86 (D.C. Cir. 1980) (applying the *Goland* standard).

Unless there is evidence of control by some other entity, we must conclude that the Attorney General and his Department control these documents. . . . Senators generated these materials at the specific request of the Attorney General, and they gave no indication that they wished to limit his use of them. There are no express or reasonably implied senatorial instructions concerning the Attorney General's disposition of these documents. The Senators gave no indication that their responses were to be treated as secret or sensitive, and nothing in the Attorney General's questionnaire or other circumstances indicated that Senators would have the prerogative to maintain secrecy. On this record we cannot find control by the Senators.

*Id.* at 786.

Although the Supreme Court has not had occasion to examine the control test adopted and applied on two occasions in this circuit, a recent Court decision has used language which suggests approval of this test. *Kissinger v. Reporters' Committee for Freedom of the Press,* 445 U.S. 136, 156, 100 S.Ct. 960, 972, 63 L.Ed.2d 267 (1980) (noting that the papers at issue "were not in the control of the State Department at any time").

### C. *Application of the Goland Standard to the Presentence Report*

Since the Tenth Circuit's decision in *Cook,* cited with approval in *Goland,* significant changes have occurred in the law governing presentence reports. These changes have both reduced the control over the report vested in the originating body and increased the control vested in the agency in whose possession the document resides. In our view these changes establish that the Parole Commission "controls" the presentence reports in its possession and that those reports are agency records within the meaning of the FOIA. In the discussion that follows, we analyze the various changes that have altered the status of presentence reports.

1. *Rule 32(c).* Since 1975 the Federal Rules of Criminal Procedure have required sentencing courts to disclose to a requesting defendant before the imposition of sentence the contents of his presentence report, exclusive of the recommendation of sentence.[9] Material which

> in the opinion of the court . . . contains diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality, or any ·other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons [10]

is not required to be disclosed verbatim but may instead be summarized for the defendant by the sentencing court.[11] The wisdom of and need for presentence report disclosure was hotly debated for many years before a rule requiring disclosure was proposed by the Court and approved by the Congress.[12] In 1966, the advisory committee took note of the debate,[13] but the amendment to Rule 32 ultimately proposed and adopted in that year left the decision to disclose entirely within the discretion of the sentencing judge.[14] The 1966 advisory committee "hoped that courts [would] make increasing use of their discretion to dis-

---

9. Fed.R.Crim.P. 32(c)(3).

10. *Id.* 32(c)(3)(A).

11. *Id.* 32(c)(3)(B).

12. *See, e. g.,* sources cited in: Advisory Comm. Note, H.R.Doc.No. 292, 93d Cong., 2d Sess. 70–71 (1974), 62 F.R.D. 271, 324 (1974); Advisory Comm. Note, 39 F.R.D. 168, 193–94 (1966); Note, *Proposed Changes in Presentence Investigation Report Procedures,* 66 J.Crim.L. & Criminology 56 (1975). *See generally* Fennell

& Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts,* 93 Harv.L.Rev. 1615, 1623–34 (1980) [hereinafter cited as *Due Process at Sentencing*].

13. Advisory Comm. Note, 39 F.R.D. at 193 (1966).

14. Fed.R.Crim.P. 32(c)(2), 383 U.S. 1087, 1108 (1966).

close"[15] but until 1975 no rule governed or reduced the exercise of that discretion.

Thus, when *Cook* was decided in 1968 a sentencing court's discretion under the Rules to refuse disclosure of the presentence report was absolute. Since 1975 the courts' unfettered "prerogative of maintaining secrecy"[16] in this regard has been abolished and replaced by a rule requiring verbatim disclosure upon request except with respect to certain materials as to which a factual summary must be given. The 1975 amendment substantially dilutes the sentencing court's control over the presentence report, even before that report is transmitted to the parole authorities and quite apart from the control over the report vested by statute in the parole authorities.[17]

2. *The Parole Commission and Reorganization Act.* Congress' consideration and approval of the 1975 amendment to Rule 32(c) coincided with its consideration and passage of the Parole Commission and Reorganization Act (the "Parole Act"), 18 U.S.C. § 4201 *et seq.* (1976). Two changes bearing upon control of the presentence report were effected by that Act and differentiate the legal context in which this case arose from the context in which *Cook* was decided.

First and most importantly, the Parole Act expressly requires the Parole Commission to consider available presentence reports in making its parole determinations.

18 U.S.C. § 4207 (1976). Presentence reports had for some time served a "joint utility,"[18] but until the Parole Act became effective their consideration by parole authorities was not expressly required.[19] In our view this express requirement–quite apart from other provisions of the Parole Act–is sufficient to answer the question of the FOIA agency record status of presentence reports which are made available to the Parole Commission.

Assuring the availability to the Parole Commission of relevant presentence reports appears to have been an object of section 4205(e) of the Parole Act.[20] That section provides:

> Upon request of the Commission, it shall be the duty of the various probation officers and government bureaus and agencies to furnish the Commission information available to such officer, bureau, or agency, concerning any eligible prisoner or parolee . . . .[21]

Assuming the presentence report constitutes "information" within the meaning of this section, the Parole Act's requirement that available information be furnished to the Parole Commission appears to have removed from the courts the discretion they may once have been thought to have had to prevent transmittal to the parole authorities of presentence reports held by the probation service.[22] More importantly, how-

15. Advisory Comm. Note, 39 F.R.D. at 194 (1966).

16. *Goland*, 607 F.2d at 346 (describing the prerogative of the Congress).

17. On the issue of control over the report by the sentencing court it may also be noted that, as originally proposed, the 1975 amendments required the parties to return all copies of the presentence report to the probation officer after sentencing. H.R.Doc.No.292, 93d Cong., 2d Sess. 20–21, 71 (1974), 62 F.R.D. 271, 321, 325 (1974). Congress, however, amended the rule to provide discretion in the sentencing judge to permit the parties to retain copies after sentencing. Fed.R.Crim.P. 32(c)(3)(D). *See* 121 Cong.Rec. 23325 (1975) (remarks of Sen. McClellan); H.R.Rep.No.247, 94th Cong., 2d Sess. 18 (1975), U.S.Code Cong. & Admin.News 1975, p. 674.

18. *Cook*, 400 F.2d 885.

19. *Compare* 18 U.S.C. § 4207 (1976) *with* 18 U.S.C. § 4203 (1970) (repealed 1976). *Due Process at Sentencing*, 93 Harv.L.Rev. at 1617 n.13: "The presentence report is the basic informational source for the development of the Bureau of Prisons classification summary and the Parole Commission guideline tables."

20. 18 U.S.C. § 4205(e) (1976). *See* S.Rep.No. 648, 94th Cong., 2d Sess. 25 (1976).

21. The probation service's retention of the presentence report is contemplated by Fed.R. Crim.P. 32(c)(3)(D).

22. Under predecessor law probation officers were expressly required to furnish information to parole authorities only with respect to those prisoners whose eligibility for parole was fixed at the time of sentence under 18 U.S.C. § 4208(a) (1970) (repealed 1976). *Id.* § 4208(c) (repealed 1976).

ever, the Parole Act's requirement that the Commission consider available presentence reports has vested the Parole Commission with a degree of control over available reports commensurate with the fulfillment of its statutory mission as an agency independent of the courts.

That the Parole Commission has control of the presentence reports in its possession is also supported by a second aspect of the Parole Act. Section 4208 of that Act, 18 U.S.C. § 4208(b) (1976), requires the Parole Commission to provide to a requesting prisoner, in advance of any parole determination, "reasonable access to a report or other document to be used by the Commission in making its determination." Because available presentence reports must now be considered by the Commission,[23] section 4208 requires that reasonable access to such reports be provided. However, in language practically identical to that of Rule 32(c), the Parole Act exempts from the reasonable access requirement certain "diagnostic opinions," material revealing "sources of information obtained upon a promise of confidentiality" or "information which, if disclosed, might result in harm, physical or otherwise, to any person." 18 U.S.C. § 4208(c) (1976). As to this material a summary of the "basic contents" must be supplied the inmate. *Id.* Thus the Parole Act both vests the Parole Commission with the requisite authority to disclose the contents of the presentence reports in its possession and reduces the Commission's discretion to withhold disclosure of such reports. Control is both supplied and abso-lute discretion reduced to a level of discretion quite similar to that provided the sentencing court in the 1975 amendment to Rule 32(c).[24]

That independent control in the Parole Commission was thought necessary to permit disclosure of the presentence report is made clear by the explanatory remarks of one of the House Committee members:[25]

> In testimony before the committee, the concern was raised as to whether the Parole Commission would be able to disclose the presentence investigation report or other such reports *that are not within their control. The Parole Reorganization Act provides that authority.*

121 Cong.Rec. 15705 (1975) (remarks of Rep. Drinan) (emphasis supplied).

Although not brought to our attention by the appellee in this case, certain language of section 4208 might be argued to diminish that part of the Parole Commission's control over the presentence report which derives from the Commission's statutory mandate of disclosure. Section 4208(c) provides:

> If any document is deemed by either the Commission, the Bureau of Prisons, or any other agency to fall within . . . [the exceptions to disclosure under this section], then *it shall become the duty of the Commission, the Bureau, or such other agency,* as the case may be, *to summarize the basic contents* of the material withheld, bearing in mind the need for confidentiality or the impact on the in-

Although publications of the Administrative Office, both before and after passage of the Parole Act, assume that presentence reports are routinely transmitted to correctional and parole authorities, Division of Probation, Administrative Office of the United States Courts, Pub.No.105, The Presentence Investigation Report 1 (1978); *Id.* Pub.No.103 at 1 (1965), a recent empirical study reveals that probation offices frequently withhold transmittal of significant portions of the report, *Due Process at Sentencing*, 93 Harv.L.Rev. at 1680, and that in some instances a postsentence report is provided instead. *Id.* at 1681.

**23.** *See* text preceding note 18, *supra.*

**24.** *See* text at notes 9 and 10, *supra.*

**25.** Both the House and the Senate bills proposed that prisoners be given reasonable access to the reports used in their parole determinations. S. 1109, 94th Cong., 1st Sess. § 4208(c) (1975); H.R.5727, 94th Cong., 1st Sess. § 4208(a), (b) (1975). As enacted, section 4208 reflects aspects of both the House and Senate bills. It should be noted however, that the provision which is discussed below, for supply by other agencies of summaries of exemptable material, was derived from the Senate bill exclusively; the House bill contained no such provision.

mate or both, and furnish such summary to the inmate.[26]

The requirement that other "agencies" submit prepared summaries of exemptable information was taken by the Conference Committee from the bill passed by the Senate. According to the Senate report, the requirement was included "[i]n recognition of administrative time constraints." S.Rep. No.369, 94th Cong., 1st Sess. 24 (1975), U.S. Code Cong. & Admin.News 1976, pp. 335, 346. There is no hint in the language of the Senate report and little suggestion elsewhere in the legislative history that the Parole Commission was to be bound by the summaries prepared by the originating agencies.[27]

In our view this requirement was designed to assist the Commission in the fulfillment of its statutory task, not to interfere with its independent judgment concerning the identification and proper sum-

mary of exemptable material. The addition of this provision by the Senate, therefore, does not mandate an interpretation of the Parole Act different from that given by a House supporter of the otherwise similar House bill. According to Representative Drinan, "it [was] the intent of the [House] committee that the Parole Commission make an *independent* determination on disclosure of the presentence investigation and other such reports . . . ." 121 Cong. Rec.15705 (1975) (remarks of Rep. Drinan) (emphasis supplied). The Commission may in fact choose to fulfill its disclosure obligations under the Parole Act strictly in accordance with the summaries provided by the probation service, but this choice is not, we think, required by that Act; and such a choice cannot, therefore, be thought to impair the control vested in the Parole Commission by this aspect of the Parole Act.[28]

---

26. 18 U.S.C. § 4208(c) (1976) (emphasis supplied). *See also* 28 C.F.R. § 2.55(d) (1979) (Parole Commission regulations concerning summaries).

27. Although it is clear that the language at issue originated in a Senate subcommittee amendment to an earlier Senate bill, it is not at all clear that this amendment was intended to bind the Parole Commission to these prepared summaries. The Senate bill's immediate predecessor, S. 1463, 93d Cong., 1st Sess. § 4203(b) (1973), provided an express disclosure exemption for presentence reports, permitting access to be denied, *inter alia*, to "any part of any presentence report, except upon agreement of the court having jurisdiction to impose sentence." *Id.* In hearings on S. 1463 the Chairman of the United States Board of Parole engaged in colloquy with members of the Senate subcommittee concerning the administrative difficulties of requesting and obtaining court permission within the time necessary to grant access and concerning the objections likely to be raised by the judiciary to disclosure of the report without their consent. *Parole Legislation: Hearings on S. 1463 Before the Subcomm. on National Penitentiaries of the Senate Comm. on the Judiciary*, 93d Cong., 2d Sess. 62–67 (1974). Senator Cook, who took a prominent role in this discussion and who suggested at its conclusion that the Committee "come up with . . . language which would meet this problem," *id.* at 67, was also quite critical of judicial refusals to grant defendants access to their presentence reports. *Id.* at 62–63, 66. The bill ultimately approved by the Senate simply provided for the preparation of summaries

by originating agencies. The only reason given to the Senate as a whole for this provision's appearance was that it was "[i]n recognition of administrative time constraints," S.Rep.No.369, 94th Cong., 1st Sess. 24 (1975), U.S.Code Cong. & Admin.News 1976, p. 346. The Conference Committee gave no explanation for the provision, merely noting that the originating agency "shall be responsible for preparing a summary of such document." H.R.Rep.No.838, 94th Cong., 2d Sess. 29 (1976), U.S.Code Cong. & Admin.News 1976, p. 360; S.Rep.No.648, 94th Cong., 2d Sess. 29 (1976).

We cannot, therefore, infer from legislative history an intent on the part of Congress to bind the Parole Commission to the summaries prepared by originating agencies. Contributing to our conclusion that the provision's history is unenlightening on this aspect of the control issue is the fact that before the provision for summaries was formally introduced in the Senate, S. 1109, 94th Cong., 1st Sess. § 4208 (1975), but after the hearings discussed above, the Supreme Court transmitted to the Congress its proposed amendments to the Federal Rules of Criminal Procedure, requiring disclosure to the defendant of the presentence report (with certain exceptions). H.R.Doc.No.292, 93d Cong., 2d Sess. 2 (1974), 62 F.R.D. at 320–21 (1974).

28. A question might be raised whether the obligation to furnish the summaries to the inmate, imposed by the final clause of section 4208(c), rests with the Parole Commission or with the originating agency. We think the statute obliges the Parole Commission to furnish the sum-

Finally, we recognize that during debate on the Parole Act, one member of Congress sought assurance from the Act's proponents that an amendment requiring FOIA disclosure of the Parole Commission's votes, "would not make public the record examined by the Parole Board." 121 Cong.Rec. 15715 (May 21, 1975) (remarks of Rep. Danielson). The seeking or giving of such assurance is probably relevant to the question of the applicability of the FOIA's exemptions but it does not, we think, bear upon a decision whether the presentence report is an agency record within the meaning of the FOIA.

The presentence report is, after all, central to the Parole Commission's primary function and from this perspective it would seem somewhat anomalous to hold that such reports do not constitute agency "records" for purposes of the FOIA. There may indeed be valid reasons why the FOIA does not mandate disclosure of the presentence report [29] and whether it does is an important question we do not decide but which we leave to the district court on remand. To that court we also leave the resolution of other issues, peculiar to this case, which may bear upon the FOIA disclosure of the presentence report here at issue.[30]

mary. We note that the Commission's own regulations are consistent with our understanding. 28 C.F.R. § 2.55(d) (1979) ("agency . . . shall furnish *for disclosure to the prisoner* a summary . . . .") (emphasis supplied).

**29.** For reasons that are unclear to us the Department did not contend either in this court or in the district court that the presentence report fell within any of the FOIA's exemptions from disclosure. This court has sometimes held that a failure to raise a specific exemption in the district court will preclude consideration of that exemption on appeal, *e. g., Jordan v. United States Dep't of Justice,* 591 F.2d 753, 779 (D.C. Cir. 1978) (en banc), or on remand, *e. g., Ryan v. Dep't of Justice,* 617 F.2d at 792. Because our holding embarks upon previously uncharted territory, we do not think it appropriate to preclude consideration on remand of the FOIA's exemptions in this case.

**30.** The Department has made a post–argument suggesting of mootness because, in preparing a supplemental memorandum, "additional facts came to light." According to the Department the entire unedited contents of appellant's presentence report were disclosed to him in advance of a parole hearing held in October, 1979. The Department asserts that although no copy was supplied him, Carson was permitted–and availed himself of the opportunity–to take notes on the presentence report. Having made this assertion, the Department argues Carson's FOIA claim is now moot, citing *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) and *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). Carson neither affirms nor denies the validity of the Department's assertions but instead attempts to turn the Department's assertions to his own advantage, arguing that once disclosed the presentence report may not thereafter be withheld. Carson cites no cases to buttress this argument, but with

respect to documents whose agency record status was not contested there is some authority for his position. *See, e. g., N. D. v. Andrus,* 581 F.2d 177, 180–82 (8th Cir. 1978) (waiver of exemption 5 by voluntary release to counsel in unrelated litigation); *Mead Data Cent., Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 253, 257–58 (D.C. Cir. 1977) (waiver of exemption 5, in part bottomed on attorney–client privilege, by sharing information with third party).

On the basis of the record now before us we reject the Department's suggestion of mootness for two reasons. First, the Department's assertions were not made on personal knowledge of counsel and they were not made on oath. Neither this court nor the district court will ordinarily take cognizance of "facts" supplied by way of such assertion. Fed.R.Civ.P. 56(e). *See, e. g., Weisberg v. United States Dep't of Justice,* 627 F.2d 365 at 369 (D.C. Cir. 1980) (no personal knowledge); *Founding Church of Scientology v. NSA,* 610 F.2d 824, 836 (D.C. Cir. 1979) (agency burden under FOIA to establish by non–conclusory affidavit that " 'each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act[] . . . .' "), quoting *Nat'l Cable Television Ass'n v. FCC,* 479 F.2d 183, 186 (D.C. Cir. 1973); *Ramsey v. United States,* 463 F.2d 815, 817 (D.C. Cir. 1972), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1569, 43 L.Ed.2d 778 (1975) (per curiam) (non–FOIA case) (failure to comply with affidavit requirements of Rule 56 warrants remand when absence of disputed issues of fact cannot be conclusively determined on record as developed). *Compare Masszonia v. Washington,* 476 F.2d 915, 919–20 (D.C. Cir. 1973) (non–FOIA case) (determination of mootness on appeal where suggestion of mootness accompanied by unopposed affidavits). *But see Crooker v. Office of the Pardon Attorney,* 614 F.2d at 828 n.3 (agency's representation concerning contents of doc-

## II. OTHER CLAIMS

Carson's request to the Parole Commission was broadly cast, seeking, *inter alia,* "copies of all documents in my Regional and National files of the United States Parole Commission pertaining to me relative to both this recent parole hearing [April, 1978] and any and all other hearings which have been held by the Commission involving me since 1972."[31]

According to an affidavit of a Parole Commission employee (the Christinzio affidavit)[32] submitted in support of the Department's motion for summary judgment, Carson was provided with more than 350 pages of documents.[33] Only five documents were withheld in their entirety; among these was the presentence report already discussed. Deletions were made from twenty–one other documents. The Christinzio affidavit identifies each document withheld in whole or in part, briefly characterizes the information withheld and states the FOIA exemption under which it was withheld.

On the basis of this affidavit and the Department's memorandum of law the district court denied Carson's motions for a *Vaughn* index and for summary judgment and granted summary judgment to the Department.[34] These rulings are contested first on the ground that the Christinzio affidavit does not comport with this circuit's requirements for a *Vaughn* index, as stated in *Founding Church of Scientology v. Bell,* 603 F.2d 945, 949 (D.C. Cir. 1979), and second on the ground that the district court applied inappropriate standards of law in determining the applicability under the FOIA of the various exemptions claimed.

 We find the Christinzio affidavit adequate in some respects but deficient in others. *See Goland,* 607 F.2d at 351–52.[35] In those respects we find it adequate we

ument accepted for purposes of appeal "with the expectation that the Government will confirm the representations in an affidavit in the District Court"). Second, if, as the Department asserts, the presentence report seen by Carson was prepared for a District of Massachusetts conviction, it may not be the only report he seeks under the FOIA. Carson seeks, *inter alia,* file documents "relative to" a *1975* parole revocation hearing, J.A. 2, and the conviction underlying *that* hearing was had not in the District of Massachusetts but in the Southern District of New York. *United States ex rel. Carson v. Taylor,* 540 F.2d 1156, 1157 (2d Cir. 1976). Furthermore, we seriously doubt whether the opportunity to view and take notes on the presentence report should be considered the equivalent of obtaining a copy of the report. *Compare Crooker v. United States State Dep't.,* 628 F.2d 9 (D.C. Cir.1980) (FOIA claim moot where copies of documents already provided under FOIA by another agency); *Ackerly v. Ley,* 420 F.2d 1336, 1340 (D.C. Cir. 1969) (FOIA claim moot where document was provided plaintiff as part of administrative proceedings). *See generally Murphy v. Dep't of the Army,* 613 F.2d 1151, 1159 (D.C. Cir. 1979) (disclosure of document description not equivalent to disclosure of substance); *Am. Mail Line, Ltd. v. Gulick,* 411 F.2d 696, 704 (D.C. Cir. 1969) (request not mooted by conclusion of proceedings for which disclosure was sought). Nevertheless, we do not feel it appropriate to preclude the parties from pursuing this line of argument on a better developed record in the district court.

We also decline on this record Carson's invitation to turn the Department's representation of previous disclosure back upon itself. In our view the extent to which prior agency disclosure may constitute a waiver of the FOIA exemptions must depend both on the circumstances of prior disclosure and on the particular exemptions claimed. *Compare N. D. v. Andrus and Mead Data Cent., Inc. v. United States Dep't of the Air Force,* both *supra, with Murphy v. Dep't of the Army,* 613 F.2d at 1158–59 (no waiver of exemption 5 by disclosure to member of Congress). Since it is not yet clear which FOIA exemptions will be claimed we cannot engage in the analysis necessary to determine whether the Commission's disclosure has effectively waived particular FOIA exemptions. Accordingly, we leave to the district court on remand the question whether Carson's previous access under the Parole Act mandates present disclosure under the FOIA.

**31.** J.A. 2.

**32.** J.A. 21–24.

**33.** J.A. 21.

**34.** *Carson v. United States Dep't of Justice,* Civ. No. 79–0140 (D.D.C. Jul. 25, 1979), J.A. 25–27.

**35.** In *Goland* this court found that a *Vaughn* index was unnecessary when the deletions at issue consisted merely of 23 pages of one document and where an affidavit submitted by the agency provided "a 'relatively detailed analysis' of the material deleted, ma[de] clear which

have also found no error in the grant of judgment to the Department. In those respects we find it deficient the judgment is vacated and remanded for preparation of a new affidavit and for further consideration under applicable law. Only those respects in which we find the affidavit deficient are discussed below.

The Department relied exclusively upon exemptions 6 [36] and 7(C),[37] the FOIA's "personal privacy" exemptions, to justify the great majority of its nondisclosures. Four letters and their enclosures were withheld in their entirety on the basis of these exemptions.[38] As to these letters we find the Christinzio affidavit inadequate to justify the Department's failure to disclose any "reasonably segregable portion"[39] of the document. As this court recently stated in *Mead Data Central, supra,* 566 F.2d at 261:

> exemptions [were] claimed for the deletions . . . ; and, explain[ed] why the deleted material fits within the exemptions claimed. . . ." 607 F.2d at 351 (footnote omitted) (*quoting Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). *See also Mead Data Cent., Inc. v. United States Dep't of the Air Force,* 566 F.2d at 251 (similar). *But see Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 861 (D.C. Cir. 1980) (conclusory assertions of privilege "patently inadequate").

**36.** 5 U.S.C. § 552(b)(6) (1976) ("personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy").

**37.** *Id.* § 552(b)(7)(C) ("investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (C) constitute an unwarranted invasion of personal privacy").

**38.** The Christinzio affidavit provided the following information concerning these letters:

 Letter of May 8, 1975 from USPO [United States Probation Officer] to U. S. Board of Parole detailing information received from a private citizen alleging a criminal act on the part of Mr. Carson and advising that this matter was the subject of an investigation. Denied pursuant to 5 U.S.C. §§ 552(b)(7)(C) and 552(b)(6).
 . . . Letter of April 20, 1975 with enclosures from a private citizen concerning an alleged criminal act by Mr. Carson. This letter was used in an investigation of this matter. Denied pursuant to 5 U.S.C. §§ 552(b)(7)(C) and 552(b)(6).

[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts.

In addition, in our view the affidavit's description of certain material deleted from one other letter was too vague to determine *de novo* the justifiability of withholding the information under the FOIA's privacy exemptions. The deleted material was described merely as "information concerning individuals";[40] the nature of the information or how its disclosure might constitute an "unwarranted"[41] or "clearly unwarranted"[42] invasion of privacy is not otherwise revealed. So vague a description does not

 . . . Letter of May 5, 1975 with enclosures from a private corporation to a private citizen regarding an alleged criminal act by Mr. Carson. This letter was used in the investigation of this matter. Denied pursuant to 5 U.S.C. §§ 552(b)(7)(C) and 552(b)(6).
 . . . Letter of June 5, 1975 from a private citizen to USPO providing additional information on an alleged criminal act by Mr. Carson. Denied pursuant to 5 U.S.C. §§ 552(b)(7)(C) and 552(b)(6).
J.A. 22.

**39.** 5 U.S.C. § 552(b) (1976): "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt . . . ." *See Ryan v. Dep't of Justice,* 617 F.2d at 790–91 (D.C. Cir. 1980) (segregability under FOIA exemption 5); *Mead Data Cent., Inc. v. United States,* 566 F.2d at 259–62 & n.51 (same, citing cases).

**40.** The full information supplied by the Christinzio affidavit concerning this letter is set forth below:

 Letter of November 28, 1975 from USPO Berger to USPO Brown. Reference to an informant and alleged criminal activity of another individual and name of law enforcement official were deleted pursuant to 5 U.S.C. §§ 552(b)(7)(C) and 552(b)(6). Information concerning individuals has been deleted pursuant to 552(b)(6).
J.A. 22.

**41.** 5 U.S.C. § 552(b)(7)(C) (1976).

**42.** *Id.* § 552(b)(6).

permit a district court to engage in the analysis and balancing ultimately required when these exemptions are claimed.[43]

The FOIA's exemption 7(A)[44] was invoked to justify deletions from two letters. In one case the information deleted was described as "investigative material"[45] and in another as "information on an investigation."[46] Exemption 7(A), however, cannot justify withholding unless the material withheld relates to a "concrete prospective law enforcement proceeding."[47] Whether in this case the "investigations" undertaken remain active or whether, as seems more likely given the age of the documents, they have been ended, cannot be ascertained from the affidavit submitted. Indeed in one case the affidavit's description of the document is so cursory that the law enforcement purpose of the "investigative material" is left in doubt.[48]

On remand the Department should be permitted an opportunity to cure the affidavit's deficiencies before the justifiability of withholding under the FOIA is again considered by the district court. The judgment of the district court is

*Affirmed in part, vacated in part and remanded.*

---

**43.** *See generally Dep't of the Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (exemption 6); *Common Cause v. Nat'l Archives and Records Serv.*, 628 F.2d 179 (D.C. Cir.1980) (exemption 7(c); *Getman v. NLRB*, 450 F.2d 670 (D.C. Cir. 1971) (exemption 6).

**44.** 5 U.S.C. § 552(b)(7)(A) (1976) ("investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings").

**45.** The Christinzio affidavit's full statement concerning that letter is as follows:

Letter of December 3, 1975 from United States Probation Officer (USPO) Berger to USPO Brown. Pursuant to 5 U.S.C. §§ 552(b)(7)(C) and 552(b)(6) the names of the law enforcement personnel have been deleted. Names of and identifiable information concerning other persons mentioned have been deleted pursuant to 5 U.S.C. § 552(b)(6). Investigative material has been deleted pursuant to 5 U.S.C. § 552(b)(7)(A). J.A. 21.

**46.** The full information supplied· concerning this letter was as follows:

Letter of July 16, 1975 from USPO Brown to U. S. Board of Parole concerning violations of conditions of supervision. Names of law enforcement officials involved in the investigation of Mr. Carson, names and addresses of individuals who were payers of three uncashed checks found on Mr. Carson at the time of his arrest were deleted pursuant to 5 U.S.C. §§ 552(b)(7)(C) and 552(b)(6). Information on an investigation has been deleted pursuant to 5 U.S.C. § 552(b)(7)(A). J.A. 23.

**47.** 120 Cong.Rec. 17033 (1974) (remarks of Sen. Hart), *quoted in NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 232, 98 S.Ct. 2311, 2321, 57 L.Ed.2d 159 (1978) (construing exemption 7(A)); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d at 869–70 (same, also quoting remarks of Sen. Hart); *Nat'l Pub. Radio v. Bell*, 431 F.Supp. 509, 513–15 (D.D.C.1977) (same). *But see Moorefield v. United States Secret Serv.*, 611 F.2d 1021, 1024–26 (5th Cir. 1980) (construing "enforcement proceedings" broadly).

**48.** *See* note 45, *supra.* The Department's memorandum submitted in the district court appears to supply some of the missing pieces; that memorandum states that *both* exemption 7(A) deletions "discuss an investigation that commenced after [Carson] was arrested and several uncashed checks were found in his possession." J.A.16. Such information, however, should be supplied by affidavit, not by mere argumentative assertion. *See* note 30, *supra.*