**Sidney M. WOLFE, M.D., Public Citizen Health Research Group, Appellants,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES.**

No. 82–1568.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 24, 1982.

Decided July 8, 1983.

Cornish F. Hitchcock, Washington, D.C., with whom William B. Schultz and Alan B. Morrison, Washington, D.C., were on the brief, for appellants.

Mark H. Gallant, Atty., Dept. of Justice, Washington, D.C., with whom Stanley S. Harris, U.S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before MIKVA and EDWARDS, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

MacKINNON, Senior Circuit Judge:

The Public Citizen Health Research Group and its director, Sidney Wolfe, filed a request under the Freedom of Information Act (FOIA or the Act), 5 U.S.C. § 552 (1976 & Supp. V 1981), to compel release of a report prepared by President-elect Reagan's transition team regarding the Department of Health and Human Services (the Department). The Department denied the request, stating that the report is not an "agency record" within the meaning of the Act. The requestors then filed an action in federal district court to compel disclosure.[1] The district court granted summary judgment in favor of the Department, having concluded that the report of the President-elect's transition team is not an "agency record" within the meaning of the FOIA. *Wolfe v. Department of Health and Human Services,* 539 F.Supp. 276 (D.D.C.1982). We agree with the district court and, therefore, affirm the grant of summary judgment.

## I.

By letter in July 1981, plaintiffs requested the Department of Health and Human Services to provide access "to all reports compiled by the Department of Health and Human Services' transition team." The Department responded that

> [m]aterials developed to aid in the transition were compiled for the Office of the President-Elect prior to the Inauguration and did not become a part of Departmental files. Thus, there are no records in our possession which would respond to your request.

Record (R.) 13.

This decision was appealed to the Assistant Secretary of Management and Budget for the Department, who denied the appeal and reiterated that the documents requested were not "agency records" because they were "neither made, received, nor preserved by the Department" and were not in "the possession or control of the Department." R. 13. The plaintiffs then filed this action in the United States District Court for the District of Columbia.

The facts regarding the documents are uncontroverted.[2] The documents were compiled by President-elect Reagan's transition team and consist of a one-volume final report, two volumes of appendices, and eight volumes of correspondence. The transition team completed its work on December 20, 1980, and distributed copies of the report to the President-elect's advisor, Edwin Meese, the central transition team, members of the Department transition team, and Secretary-designate (then Senator) Richard Schweiker. Secretary-designate Schweiker gave his copy to an aide, David Newhall, who made a copy for himself and retained both his and the Secretary-designate's copy. Following Secretary Schweiker's confirmation, Newhall was appointed as the Secretary's Chief-of-Staff. When he moved into the Department's offices, Newhall brought both copies of the report with him and placed them in a locked, glass bookcase in his office marked "personal." Neither Newhall, Schweiker, nor any other Department employee ever used or consulted these documents, except in preparation for this litigation.

Applying *Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980), to these facts, the district court concluded that the Department of Health and Human Services never possessed or exercised control over the transition team reports. The court stated that

> in this case although copies of the report are physically located at HHS the report

---

1. The statute provides:

    On complaint, the district court of the United States ... has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.
    5 U.S.C. § 552(a)(4)(B).

2. The trial judge found there to be no genuine issue of material fact regarding the origin of the documents, their use, or their present location. These facts were established by uncontroverted affidavits. 539 F.Supp. at 277. Consequently, appellants' challenge to the propriety of the grant of summary judgment is unfounded.

was not generated by HHS, is not within the control of HHS, and indeed never entered the Department's files or was ever used by the Department for any purpose.

*Wolfe, supra,* 539 F.Supp. at 277.

Therefore, the court held that the transition team reports were not "agency records" within the meaning of the FOIA.

## II.

"Under 5 U.S.C. § 552(a)(4)(B) federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger, supra,* 445 U.S. at 150, 100 S.Ct. at 968. A threshold inquiry in any FOIA case is whether the documents requested are in fact "agency records." [3] Although the Act

does not contain a definition of the term, the Supreme Court has established that a document qualifies as an "agency record" if it was either "created" or "obtained" by an agency subject to the FOIA. *Forsham v. Harris,* 445 U.S. 169, 182, 100 S.Ct. 978, 985, 63 L.Ed.2d 293 (1980). The Department of Health and Human Services did not "create" these documents.[4] Therefore, the transition team reports can be "agency records" only if the Department has "obtained" them.

While the Supreme Court has expressly declined "to categorize what agency conduct is necessary to support a finding that [the agency] has 'obtained' documents," [5] at the least, the agency cannot have "obtained" documents until it has possession or control over them.[6] In *Forsham,* the Court

**3.** Restating the jurisdictional test of the *Kissinger* majority, Justice Stevens recommends that the "correct analysis" in FOIA cases requires the court to

confront three separate questions in the following order:

(1) are any of the requested documents "agency records"?

(2) if so, have any of them been withheld because they are in the *legal* custody of the agency? and

(3) if so, was the withholding improper?

*Kissinger, supra,* 445 U.S. at 162, 100 S.Ct. at 974. (Stevens, J., concurring in part and dissenting in part).

*See McGehee v. CIA,* 697 F.2d 1095, 1105 (D.C. Cir.1983), *modified in other respects on reh'g,* 711 F.2d 1076 (1983).

**4.** Appellants do not contend that the documents were "agency records" when they were created. Brief for Appellants at 12 n. 2 and Reply Brief at 4. *See also Wolfe, supra,* 539 F.Supp. at 288 n. 1. Such a contention would be premised upon a finding that the President-elect's transition team was a FOIA agency and would require this court to employ a different analysis. *Cf. McGehee, supra,* 697 F.2d at 1108–09 (distinguishing between documents in an agency's *possession* that were created by entities not subject to the FOIA and documents originally compiled by organs of government that fall within the Act's ambit). Because appellants do not contend that these documents *originated* with a FOIA agency, our analysis proceeds from the premise that these documents were created by a non-FOIA agency and jurisdiction under the Act is proper only if the Department has "obtained" them.

Recognizing that the issue is not presented in this case, we note that one court has ruled that

the President-elect's transition team is not an "agency" within the meaning of the FOIA. *Illinois Institute for Continuing Legal Education v. United States Dep't of Labor,* 545 F.Supp. 1229, 1231–33 (N.D.Ill.1982).

**5.** *Forsham, supra,* 445 U.S. at 186 n. 17, 100 S.Ct. at 987 n. 17.

**6.** In *Kissinger,* the Court reasoned that for an agency to "withhold" a document within the meaning of the Act "presupposes the [agency's] possession *or* control of the item withheld." 445 U.S. at 151, 100 S.Ct. at 968 (emphasis added). The *Kissinger* Court did not directly address the significance of its use of the disjunctive "or" as opposed to the conjunctive "and." The caselaw in this Circuit suggests that "possession" is a necessary, but not sufficient element to establish that an agency has "obtained" a document. *Goland v. CIA,* 607 F.2d 339, 345–46 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *Iglesias v. CIA,* 525 F.Supp. 547, 565 (D.D.C.1981). *Cf. McGehee v. CIA,* 697 F.2d 1095, 1107–08 (D.C.Cir.1983), *modified in other respects on reh'g,* 711 F.2d 1076 (1983) (identifying special policy considerations—applicable only to certain types of documents—underlying prior decisions that have suggested that possession alone is insufficient to establish that an agency has "obtained" a document). Language in the Supreme Court's *Forsham* opinion suggests, however, that agency possession alone might be sufficient to render the document an "agency record" subject to the Act. *Forsham, supra,* 445 U.S. at 185, 100 S.Ct. at 986.

If "possession" is a necessary predicate to the finding that an agency has "obtained" a

emphasized the "possessory" concept implicit in the Act, noting that documents which have not passed from "private to agency control" are not "agency records" within the meaning of the Act. *Id.* at 185, 100 S.Ct. at 986. Possession of the documents, sufficient for FOIA purposes, embodies more than the mere physical location of the documents; the *agency* must actually have custody of the documents. There must be some "nexus" between the agency and the documents other than the mere incidence of location. *Id.* at 178, 100 S.Ct. at 983.

Establishing who "possesses" documents is a factual determination. To support their assertion that these materials belong to the Department, the requestors rely upon the mere fact that two sets of the transition team documents are within the four walls of the agency. Such a showing is insufficient. As the Supreme Court stated in *Kissinger:*

> We simply decline to hold that the *physical location* of the notes of telephone conversations renders them "agency records." The papers were not in control of the State Department at any time. They were not generated in the State Department. They never entered the State Department's files, and they were not used by the Department for any purpose. If mere physical location of papers and material could confer status as an "agency record" Kissinger's personal books, speeches, and all other memorabilia stored in his office would have been agency records subject to disclosure under the FOIA.

445 U.S. at 157, 100 S.Ct. at 972 (emphasis added).

Newhall's possession of the transition team reports is analogous to Kissinger's possession of his telephone notes. In both instances the documents were generated by an entity outside the reach of the FOIA; the individual's personal possession of the documents pre-dated his affiliation with the

agency; and the individual brought the documents within the four walls of the agency, but did not integrate the documents with agency files or records. In neither case was there any real nexus between the documents and the agency other than their physical location. Neither set of documents lost its private character simply upon arrival within the agency building.

The uncontroverted facts reveal that the transition team documents never entered the Department's files and/or resources. In a sworn affidavit, Mr. Casciotti, the Deputy Executive Secretary for Human Services, Department of Health and Human Services, attests that he conducted a search of the Department's records systems, including computerized records, and found no indication that the documents had ever been within the files of the Department. Casciotti Affidavit ¶ 5 (R. 7). The Department of Health and Human Services was never in "possession" of these transition team documents.

Appellants attempt to distinguish *Kissinger v. Reporters Committee* and urge reliance upon *Ryan v. Department of Justice,* 617 F.2d 781 (D.C.Cir.1980), to establish agency possession. In *Ryan,* this court found that the Attorney General's possession of certain documents authored by United States Senators was coextensive with possession by the Justice Department for the purposes of the FOIA. Appellants assert that unlike the telephone notes in *Kissinger,* the documents in *Ryan* actually "related to" the business of the agency in which they were housed. It was because the documents in the Attorney General's possession were essential to the business of the Justice Department, appellants assert, that they became "agency records." Applying their *Ryan* analysis to the instant situation, appellants argue that because the transition team reports "relate to" the Department of Health and Human Services, possession of these documents by an agency official automatically confers agency pos-

---

document, then our analysis would end with the finding that the Department never possessed these documents. However, because the possession-control test is unclear, we examine both elements and conclude that the Department never exercised either possession or control over the transition team reports.

session. We do not read *Ryan* to stand for the proposition that an agency official's actual, physical possession of documents automatically renders them "agency" documents for purposes of the FOIA.

In *Ryan,* the documents were requested by and delivered to the Attorney General *during* his tenure and were intended to be used by the Attorney General to execute Justice Department business. The *Ryan* court summarily stated that the documents were in the "possession of the Justice Department" because the *agency's possession* and *use* of the documents was not controverted. 617 F.2d at 786. In fact the issue in *Ryan* was not "possession." Rather, the dispositive issues were first, who had "control" over the documents—the Senators, the President, or the Attorney General; and second, whether the various functions of the Attorney General and the Justice Department could be isolated for the purpose of determining when the agency was functioning as a FOIA agency and when the Attorney General was functioning as a FOIA-exempt, personal advisor to the President.

In this case, Newhall's possession of the transition team reports is analogous to an individual's possession of a thesis that analyzes the agency and its policies. The fact that the thesis "relates to" the business of the Department would not render it an "agency record." As long as it remains in private possession, the thesis is indistinguishable from any other material with which a public employee may come into contact and which "relates to" his job. Accepting appellants' "relates to" theory would extend the FOIA to an essentially limitless number of materials which could be said to "relate to" agency business. The Act was not intended to be accorded such a reach. The fact that the transition team reports "relate to" the business of the Department does not distinguish them from the telephone notes in *Kissinger;* neither set of documents ever lost its private character.

Agency "control" is a second indication that an agency has "obtained" a document within the meaning of the FOIA.[7] The transition team reports were never within the Department's "control." The fact that the Department never integrated these documents into its records system suggests the absence of Department control. Furthermore, the fact that no one in the agency ever read or relied upon these documents supports the finding that neither Newhall nor the Secretary ever surrendered his exclusive, *private* control over the reports.[8] Casciotti Affidavit ¶¶ 5, 6 (R. 7); Newhall Affidavit ¶ 5 (R. 7). Based upon the uncontested facts, we conclude that the Department never obtained control over these documents.

Appellants assert that, notwithstanding the fact that the documents have not been used by anyone in the agency, the fact that the documents were within the agency building made it *possible* for agency personnel to use them. The measure of whether a document, not created by a FOIA agency, is

---

**7.** *See* text at 1079 and note 6 *supra.*

The "control" issue has been analyzed from two different perspectives. Some courts look to the document creator's intent to retain control, *Goland, supra; Carson v. United States Dep't of Justice,* 631 F.2d 1008, 1010–15 (D.C. Cir.1980), while others examine the control exercised by the agency to which the FOIA request is directed, *Kissinger, supra,* 445 U.S. at 157, 100 S.Ct. at 972. *See generally, McGehee v. CIA,* 697 F.2d 1095, 1107–09 (D.C.Cir.1983), *modified in other respects on reh'g,* 711 F.2d 1076 (1983).

We do not use the "intent to control" test because unlike the documents in *Goland* and *Carson,* these transition team reports are not within the agency's possession and have never been used by the agency. Instead, following

*Kissinger,* we focus upon the nature and extent of control exercised by the agency to which the FOIA request was directed, *i.e.,* the Department.

**8.** It is unclear whether, in the absence of agency possession, it is even necessary to examine use or reliance. In *Forsham* the Court stated that

reliance on a document does not make it an agency record if it has not been created or obtained by a federal agency. Reliance or use may well be relevant to the question of whether a record *in the possession of an agency* is an "agency record."

445 U.S. at 177 n. 7, 100 S.Ct. at 983 n. 7 (emphasis added).

an "agency record" depends upon whether it has actually been obtained by an agency subject to the Act. "[T]he FOIA applies to records which have been *in fact* obtained, and not to records which merely *could have been* obtained." *Forsham, supra,* 445 U.S. at 186, 100 S.Ct. at 987. An unexercised agency right of access is irrelevant.[9]

Our disposition of this case comports with the result reached in a similar case, *Illinois Institute for Continuing Legal Education v. United States Department of Labor,* 545 F.Supp. 1229 (N.D.Ill.1982). The plaintiffs in *Illinois Institute* sought disclosure of a "briefing book" on the Department of Labor prepared by the President-elect's transition team. In a thorough opinion, Judge Prentiss Marshall held that one volume of the briefing book was not subject to the FOIA because it was not an "agency record."[10] Judge Marshall's conclusion was based upon two separate grounds. First, Judge Marshall held that a President-elect's transition team is not an "agency" within the meaning of the Act. Therefore, the document was not an "agency record" when created. *Id.* at 1231–33. Second, the document was not a Department of Labor "agency record" because that agency neither "created" the document nor ever "obtained" it. *Id.* at 1233–35. Judge Marshall found the fact that the document was located within the agency to be of "no functional significance" and he concluded that the document had never lost its "character as a private paper" because it had never been used by an agency official. Based upon this analysis, Judge Marshall held that the document was not an "agency record" within the meaning of the Act and granted summary judgment for the defendants.

### III.

To be subject to the disclosure requirements of the FOIA, the transition team reports must be "agency records." To be "agency records," the documents must have been "created" or "obtained" by a FOIA agency. These documents were not "created" by an agency within the reach of the FOIA and were never "obtained" by the Department of Health and Human Services. Therefore, these documents are *not* "agency records" of the Department.

The plaintiffs have failed to establish a threshold requirement in any FOIA action, *i.e.,* that the documents requested are "agency records." For this reason, the district court properly granted summary judgment for the defendants. The order of the district court is *affirmed.*

*Judgment accordingly.*

---

**9.** In recognizing the Supreme Court's statement that the mere right of access is not sufficient to make documents "agency records," we do not imply that in fact the Department *could* have obtained these records. We simply assume *arguendo* that, as asserted by appellants, the agency *could* have obtained the documents, but did not exercise its right of access.

**10.** A second issue presented in *Illinois Institute,* the applicability of FOIA exemptions to another volume of the documents which was clearly an "agency record," is not at issue in our case. 454 F.Supp. at 1235–37.