**TAX ANALYSTS, Appellant**

v.

**UNITED STATES DEPARTMENT OF JUSTICE.**

**No. 86–5625.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 16, 1987.

Decided April 29, 1988.

William A. Dobrovir, Washington, D.C., for appellant.

Jonathan S. Cohen, Atty., Dept. of Justice, with whom Joseph E. diGenova, U.S. Atty., Roger M. Olsen, Asst. Atty. Gen., Michael L. Paul and Gayle P. Miller, Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, MIKVA, Circuit Judge, and McGOWAN,* Senior Circuit Judge.

Opinion for the Court filed by Chief Judge WALD.

* Judge McGowan concurred in the judgment but died before this opinion issued.

WALD, Chief Judge:

In this appeal we decide whether the Department of Justice (the Department) has any duty under the Freedom of Information Act (FOIA or Act), 5 U.S.C. § 552(a), to make available certain opinions and orders of United States District Courts that are regularly kept in its case files. Tax Analysts, a reporter and publisher of decisions and other news affecting federal tax law, seeks access to district court decisions located in the Department's Tax Division case files.

After limited discovery and cross-motions for summary judgment, the district court held that it lacked jurisdiction because the documents were not "improperly withheld" under the FOIA. *See Tax Analysts v. Department of Justice*, 643 F.Supp. 740 (D.D.C.1986). The Department, in response to an earlier FOIA request, already makes available to Tax Analysts and other tax publishers logs of the names and originating courts of the tax cases sought here.[1] So identified, the documents sought by Tax Analysts are, at least in theory,[2] available from the district courts themselves. Therefore, the court concluded that the Tax Division's refusal to make its copies available to the plaintiff did not constitute "improper withholding" forbidden by the Act. *Id.* at 745. *See* 5 U.S.C. § 552(a)(4)(A) (district court jurisdiction "to order production of agency records improperly withheld from complainant").

The issue in this case, then, is whether the Department's disclosure of the name, docket number, and other identifying information about tax cases is sufficient, in light of their availability as public documents from the district courts in question, to discharge its responsibility not to "improperly withhold" agency records.[3] We conclude that the district court decisions are agency records that must be made available to Tax Analysts by the Department itself and remand to the district court with instructions to enter an order requiring the Department to provide some reasonable form of access to its copies of the district court opinions and orders.

I.

Tax Analysts is a nonprofit organization that disseminates news and information about federal tax law through a number of printed and electronic media.[4] Since 1972, the organization's principal publication has been Tax Notes, a weekly magazine that reports summaries of decisions and news affecting federal tax law to a readership of tax attorneys, accountants, and economists. As a supplement to the magazine, Tax Analysts offers full text reporting of all federal court tax decisions in microfiche form. Tax Analysts also compiles an electronic database, Tax Notes Today, comprised of news and commentary as well as all available federal tax decisions.

In the course of its reporting, Tax Analysts has had persistent difficulty obtaining the tax decisions of some United States District Courts. While decisions of the United States Supreme Court, United States Courts of Appeals, the United States Tax Court, and the United States Claims Court can apparently be easily obtained on request, Tax Analysts' undisputed claim is

1. The logs include case names, docket numbers, the issuing court, the names of participating attorneys, the type of case and the date and category of judgment and order entered. *Id.* at 742.

2. Tax Analysts argues that 25% of the decisions and orders it requested are practically unavailable on any regular basis because of recurrent difficulties in obtaining them by phone or mail from the district courts. There is, however, no indication in the record that Tax Analysts has been formally denied access to such decisions by the district courts; rather, some courts have not responded promptly (or at all) to their calls or letters. On this record, "practical unavaila-

bility" means inaccessibility with the resources that Tax Analysts has been willing to expend.

3. Although the district court found it unnecessary to reach the Department's alternative argument that the requested documents are not "agency records," we address that issue. *See infra* Part II. B.

4. In our recital of the factual and procedural background of the case, we rely on undisputed facts set forth in the Joint Appendix (J.A.) and in the district court's opinion. *See Tax Analysts v. Department of Justice*, 643 F.Supp. 740 (D.D.C.1986).

that securing the tax decisions rendered by the ninety-odd, far-flung federal district courts from their clerks' offices on any timely or regular basis has proven impossible. The clerks often do not respond at all to telephone requests for copies of tax opinions; even when they do, mailings take too long for prompt reporting because reproduction costs generally must be calculated and paid in advance.

Tax Analysts also has been unsuccessful in its attempts to secure the decisions from taxpayers' attorneys. As a last resort, it has sought them pursuant to the FOIA from the Tax Division of the Justice Department, which litigates, and consequently receives a copy of all decisions rendered, in the more than 20,000 tax cases filed in United States District Courts each year. Upon receipt, the Division classifies each decision as a win, partial win, or loss, and puts the decision in an individual case file. If the government prevails before the district court, and the taxpayer appeals, the case file, including the district court decision, is forwarded to the Division's appellate staff. If the taxpayer prevails, the file and decision are sent to the Solicitor General, who decides whether to take an appeal. If an appeal is prosecuted, the Division's appellate staff utilizes the case file and decision in appellate briefing and argument.

Tax Analysts' initial FOIA request to the Justice Department, filed on July 20, 1979, sought all opinions and orders received by the Tax Division earlier that month from United States District Courts, United States Courts of Appeals, and the United States Claims Court. The request was denied by the Department on the ground that the decisions were not "agency records." Tax Analysts appealed the denial but later withdrew its request. In December 1979, Tax Analysts sought and was granted access to the Division's weekly log of tax cases decided by the federal courts. These weekly logs, which list the court, the name and nature of the case, the docket number, the attorneys for the taxpayer and the

government, and the date and type of disposition, have been provided to Tax Analysts since that time.

In November 1984, Tax Analysts initiated a new request for copies of all district court decisions, opinions, and orders identified in the Division's weekly log. The Justice Department denied these requests. Tax Analysts filed this suit on July 7, 1985, seeking "weekly access" to all such district court decisions and a permanent injunction against future denial of access to such documents. After limited discovery, both parties filed motions for summary judgment.

The district court granted the Justice Department's motion to dismiss the complaint, finding that 5 U.S.C. § 552(a)(4)(B), which confers jurisdiction in the district court only when "agency records" have been "improperly withheld," did not apply here. *Tax Analysts v. Department of Justice*, 643 F.Supp. 740 (D.D.C.1986). The documents sought by Tax Analysts, the court said, "already are available from their primary sources, the district courts," and because they are "on the public record" cannot be deemed "improperly withheld." *Id.* at 743–44. In the case of records already publicly available, the FOIA's primary purpose, to prevent "secret agency law," is not at risk. *Id.*

The district court also concluded that the specific relief Tax Analysts sought, *i.e.*, an injunction against any future withholding of such decisions, is unavailable under the FOIA. The requested order or injunction, the court held, "amounts to giving [Tax Analysts] automatic access to the decisions without the need for making specific FOIA requests. The FOIA refers to existing documents, not to documents which [the Tax Division] may receive in the future." *Id.* at 745 (citations omitted). This appeal followed.[5]

## II.

The government defends the district court's dismissal of the complaint, contend-

**5.** On appeal Tax Analysts requests only the approximately 25% of district court decisions that it has been unable to obtain by phone or mail

and thus considers practically unavailable. *See* Appellant's Brief at 11.

ing that none of the FOIA's three jurisdictional requirements has been met. "Under 552(a)(4)(B)," the Supreme Court has said, "federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.' Judicial authority to ... enjoin agencies can only be invoked, under ... § 552, if the agency has contravened all three components of this obligation." *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150, 100 S.Ct. 960, 968, 445 L.Ed.2d 267 (1980). The district court looked no further than the first two components, holding that the requested documents could not be deemed "improperly withheld" if they were publicly available from the courts, despite practical difficulties in obtaining them promptly by mail or phone. *Tax Analysts,* 643 F.Supp. at 743–44. The government defends this rationale on appeal, and renews its additional argument that the decisions are not "agency records."

A. *Have the Documents Been "Improperly Withheld"?*

 Agency records may normally be withheld only if the agency sustains its burden of proving that they fall within a

specific exemption in the statute.[6] *See Coastal States Gas Corp. v. Department of Energy,* 644 F.2d 969, 975 (3rd Cir.1981). Neither an agency nor a court may impose its own additional criteria as to when disclosure is proper; the settled policy of the FOIA is one of "full agency disclosure unless information is exempted under clearly delineated statutory language." S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965).[7] Indeed, we have said more than once that a "refusal to release documents that are in [an] agency's 'custody' or 'control' for any reason other than those set forth in the Act's *enumerated* exceptions would constitute 'withholding.'" *McGehee v. CIA,* 697 F.2d 1095, 1110 (emphasis added; footnote omitted), *aff'd in part and vacated in part on other grounds,* 711 F.2d 1076 (D.C.Cir. 1983). Most important, the statute itself is clear on the point: "This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section." 5 U.S.C. § 552(c).

 No exemption applies to the district court opinions.[8] The Department maintains nonetheless that it need not affirmatively make them available to Tax Analysts because the documents have not

6. Congress purposely chose a "disclosure" statute, not a "withholding" one. *Getman v. NLRB,* 450 F.2d 670, 679 (D.C.Cir.1971); *see also Lykins v. Department of Justice,* 725 F.2d 1455, 1460–62 (D.C.Cir.1984) (rejecting attempts to avoid disclosure of documents on ground that they were "improperly withheld"). The statute creates a presumption in favor of disclosure. *Department of the Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976).

7. The only exception to this narrow interpretation of the "improperly withheld" requirement recognized so far is set forth in *GTE Sylvania, Inc. v. Consumers Union,* 445 U.S. 375, 386–87, 100 S.Ct. 1194, 1201–02, 63 L.Ed.2d 467 (1980), where the Supreme Court unanimously held that agency records are not "improperly withheld" when a lawful injunction by a federal court prohibits agency compliance with a FOIA request. In such cases, the Court said, the agency cannot be compelled through the FOIA to circumvent the normal procedural requirements for challenging a valid injunction. *Id.*

Here, no procedural constraint bars disclosure by the Tax Division. Indeed, the Justice

Department has indicated that it will make available requested decisions and orders for those cases in which an appeal is authorized. Appellee's Brief at 28 n. 22. And individual attorneys in the Division often release opinions to Tax Analysts and others.

In approximately four cases district courts have placed limits on the Department's use of their decisions. J.A. at 25–26. Such exceptional cases may well fall within the ambit of *GTE Sylvania,* but that issue is not litigated here.

8. The government contends that even if these documents are "agency records improperly withheld," they should be exempt from disclosure under Exemption 2. 5 U.S.C. § 552(b)(2) (materials "related solely to the internal personnel rules and practices of an agency" exempt). No reasonable construction of Exemption 2 would, however, justify withholding these court decisions. The Tax Division's reliance on these opinions and orders in pursuit of its enforcement litigation, not to mention the public's obvious interest in them, makes specious any argument that the decisions relate only to "internal and personnel" matters. *See Founding Church of Scientology v. Smith,* 721 F.2d 828, 830 n. 4 (D.C.Cir.1983).

been *withheld* to begin with; it argues that with the information already provided through the Division's logs, Tax Analysts can obtain the decisions from the originating courts themselves.

Although we can find no clear precedent on the issue, it strikes us as strange that an agency could in all cases deny access to records otherwise disclosable on the ground that they are available elsewhere. It is true that an agency need not respond to a FOIA request for copies of documents where the agency itself has provided an alternative form of access. For example, in *SDC Development Corp. v. Mathews*, 542 F.2d 1116, 1119 (9th Cir.1976) (Kennedy, J.), the Ninth Circuit held that a computer database of medical information need not be disclosed in response to the FOIA request because it was already available from the agency through another statutorily prescribed means. And in *Lead Industries Ass'n, Inc. v. OSHA*, 610 F.2d 70 (2d Cir.1979), Judge Friendly explained, albeit laconically, why material in an agency record that had previously appeared in the agency's final published report need not be separately disclosed pursuant to a FOIA request: "If the segment appeared, it is already on the public record and need not be disclosed." [9] *Id.* at 86. Relying on *Lead Industries*, a Seventh Circuit district court similarly denied access to preliminary drafts of a later published report primarily on Exemption 5 grounds, stating that as to

matters appearing in the final version, "Material already on public record need not be disclosed." *City of W. Chicago v. Nuclear Regulatory Comm'n*, 547 F.Supp. 740, 749 (N.D.Ill.1982). But whether the principle of alternative access by the same agency spills over to requests of one agency for "public record" documents obtainable from another independent source is not so clear.[10]

For instance, at least one Supreme Court FOIA opinion seems to assume that public availability from a nonagency source is not sufficient by itself to justify an agency's refusal to make its records available under the FOIA. In *Department of State v. Washington Post Co.*, 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982), while the Court opined that citizenship information which is "a matter of public record somewhere in the Nation" may make it *less* likely to be exempt from disclosure under Exemption 6, 5 U.S.C. § 552(b)(6), as a clear invasion of personal privacy, it never hinted at the possibility that its public record status alone would suffice to exempt it. *Id.* at 602–03 n. 5, 102 S.Ct. at 1961–62 n. 5.[11] Similarly, in *Reporters Committee for Freedom of the Press v. Department of Justice*, 816 F.2d 730, *modified*, 831 F.2d 1124 (D.C.Cir.1987), *cert. granted*, —— U.S. —— 108 S.Ct. 1467, 99 L.Ed.2d 697 (1988), we held that FOIA disclosure of criminal histories does not run afoul of the privacy exemption if they are

---

**9.** In *Lead Industries*, the applicant sought access to two draft reports and other documents prepared by OSHA in a rulemaking proceeding to revise the permanent standard for exposure to lead. The agency claimed and the court agreed that the portion of this information that did not appear in its final report was exempt under Exemption 5 as an internal agency memorandum reflecting the agency's deliberative process.

**10.** In an unpublished decision by our own district court, *Eason v. Nuclear Regulatory Comm'n*, 1 G.D.S. ¶ 80,092 (D.D.C. Feb. 5, 1980), a FOIA applicant requested copies of a daily compilation of newspaper and magazine articles on nuclear energy produced at the Nuclear Regulatory Commission. The court granted summary judgment for the agency, *not* on the ground that the articles were publicly available *elsewhere*, but because *the agency* in fact made the compilation available in its public reading room. Although we recognize that under our

rules unpublished decisions may not be cited as precedent, D.C.Cir.Rule 14; *see also* D.C.Cir. *Handbook of Practice and Internal Procedures* 50 (1987), we refer to one here only as an illustration. We do so primarily because of the dearth of opinions, published or unpublished, dealing with comparable situations.

**11.** Such citizenship information, while "a matter of public record on file in various district courts across the country," is "difficult to locate." *Washington Post Co. v. Department of State*, 647 F.2d 197, 199–200 (D.C.Cir.1981) (Lumbard, J., concurring), *reversed*, 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). *See also Simpson v. Vance*, 648 F.2d 10, 15 (D.C.Cir. 1980) (portions of State Department's Biographical Register *not* exempt under privacy exemption because already a matter of public record; no suggestion that requesting parties must obtain information from alternative source).

publicly available in the originating jurisdiction. No suggestion was made in this case either that the agency could meet its FOIA duty by directing the applicant to the original public source for the requested record. Indeed, it is common knowledge that agency records often contain publicly available information, e.g., newspaper clippings, other government publications. Yet we are aware of no court which has denied access to such documents on the ground that they are available elsewhere, and several have assumed that such documents must still be produced by the agency unless expressly exempted by the Act.

The statute itself confers on the courts the power and responsibility to "enjoin the agency from withholding" disclosable records, 5 U.S.C. § 552(a)(4)(B), indicating that it is the *agency's* responsibility to make its records available, whatever their source. In common parlance, if someone asks to borrow another's newspaper, and she says, "No, go to the newsstand and buy your own," she is "withholding" it. Similarly, it would be a novel interpretation of the FOIA's prohibition on "withholding," that permitted an agency to direct an applicant elsewhere for the information he sought from that agency's files.

The Department predictably points out that making and sending copies of all federal district court tax decisions to Tax Analysts on a weekly basis would create large administrative burdens. This concern weighed heavily in the district court's analysis and troubles us as well. Imposing an enormous and costly administrative burden on the Justice Department to secure already publicly available material for a commercial publication is certainly not the commonly perceived purpose of the FOIA.[12] Nonetheless, we cannot find in the words of the statute any exemption to cover such a situation and we are comforted somewhat by the knowledge that the burden in this case need not be so excessive as the Department makes out.[13] Compliance with the request for access to such decisions could involve no more than a memorandum to tax attorneys telling them to make an extra copy of district court decisions as they receive them and route such copies to a central file to which the plaintiffs would have access.[14] No file searches need be involved at all.

Thus our decision that district court opinions qualifying as "agency records" cannot be withheld means only that extra copies of these decisions must be made available in

**12.** Yet by providing meaningful access to the Tax Division's enforcement record, disclosure of practically unavailable opinions in which it has been a party may actually serve Congress' intent "'to open agency action to the light of public scrutiny.'" *Department of the Air Force v. Rose,* 425 U.S. at 361, 96 S.Ct. at 1599 (quoting *Rose v. Department of the Air Force,* 495 F.2d 261, 263 (2d Cir.1974)). Disclosure also serves the subsidiary FOIA purpose of providing public access to the storehouse of information that agencies gather in the course of government business. *See, e.g.,* 120 Cong. Rec. 34165 (1974) (remarks of Rep. Alexander); Freedom of Information: Hearings Before Subcomm. on Admin.Practice and Procedure of S. Judiciary Comm. on S. 1666, 88th Cong., 1st Sess. 8 (statement of Dean Earl F. English); Federal Public Records Law: Hearings Before Subcomm. of H. Comm. on Government Operations on H.R. 5012, 89th Cong., 1st Sess. 154 (1965) (statement of Rep. Wydler).

**13.** The Department of Justice "estimates that it would take at least two or three paralegals working full time to respond to [Tax Analysts'] weekly FOIA requests, at an annual direct com-

pensation cost of nearly $75,000 for search time alone." J.A. at 29. This assumes that there is no more cost-effective way of systematically disclosing the decisions. *See infra* notes 14–15 and accompanying text. Furthermore, under the Act, Tax Analysts must pay the Department's "standard charges" for search and duplication. 5 U.S.C. § 552(a)(4)(A). The Department's own regulations similarly provide for the collection of fees from requesters. *See* 28 C.F.R. § 16.10 (1987) (fee schedules, services for which charges exacted, collection procedures and charge waiver rules). This is not therefore a case in which a commercial publisher is seeking to shift its operating costs to federal taxpayers but rather one in which existing government machinery is being used to enhance the efficiency of a privately provided public service, ensuring prompt public access to federal court decisions. Such a result is not at odds with the goals of the FOIA.

**14.** It appears equally plausible that those charged with filing decisions in Tax Division case files could make an extra copy and send it to a central location. *See* J.A. at 22 (indicating that one person is familiar with all case files).

an agency reading room.[15] The Department is not *required* by statute to mail copies of all such decisions to Tax Analysts nor even to provide a requester-convenient location for access. *See Mandel Grunfeld and Herrick v. U.S. Customs Service,* 709 F.2d 41 (11th Cir.1983) (posting in Puerto Rican customshouse of agency records sufficient to meet FOIA obligation to Miami attorney applicant). The yoke of the FOIA in this instance may be lighter than it would appear at first glance.

At any rate, as we have incanted so often, the statute does not confer judicial discretion to balance its dictates against the administrative burdens of disclosure.[16] *See Sears v. Gottshalk,* 502 F.2d 122, 126 (4th Cir.1974) (burden and expense of disclosure does not justify withholding), *cert. denied sub nom. Sears v. Dann,* 422 U.S. 1056, 95 S.Ct. 2680, 45 L.Ed.2d 709 (1975). Congress eliminated agency discretion to withhold information on administrative burden grounds when it substituted the FOIA for section three of the Administrative Procedure Act in 1974. 5 U.S.C. § 1002 (1964) (limiting disclosure to "persons properly and directly concerned" with information). *See Environmental Protection Agency v. Mink,* 410 U.S. 73, 79–80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). Moreover, Congress explicitly dealt with the matter of administrative expense by providing for the payment of search and duplication costs by FOIA claimants. *See supra* note 13.

■ In sum, we hold that in response to a FOIA request, an agency must *itself* make disclosable agency records available to the public and may not on grounds of administrative convenience avoid this statutory duty by pointing to another public source for the information. We reject the Tax Division's novel argument that it need only provide a log telling the applicant where these decisions can be obtained elsewhere.

## B. *Are the Decisions "Agency Records"?*

The district court never reached the question of whether the requested opinions and orders constituted agency records in the first place. On appeal the Justice Department renews its argument that the district court decisions sought by Tax Analysts are not "agency records" within the meaning of the FOIA.

"[T]he Freedom of Information Act, for all its attention to the treatment of 'agency records,' never defines that crucial phrase." *McGehee,* 697 F.2d at 1106. The legislative history of the FOIA is similarly unilluminating. *See id.; Forsham v. Harris,* 445 U.S. 169, 182–87, 100 S.Ct. 977, 985–87, 63 L.Ed.2d 293 (1980) (limiting "agency records" to documents created or retained by an agency).

The Supreme Court, however, has necessarily had to probe the meaning of "agency record" on several occasions. In so doing, it has emphasized agency possession as one necessary facet. *See Forsham,* 445 U.S. at 184–87, 100 S.Ct. at 986–87. *See also Kissinger,* 445 U.S. at 150–55, 100 S.Ct. at 968–71 (agency possession necessary for "withholding" of former agency records). There is no doubt here that the Tax Division possesses the requested documents. The Court has made clear, however, that possession alone may not suffice to transform a nonagency document into an agency record. *Forsham,* 445 U.S. at 185 n. 16, 100 S.Ct. at 987 n. 16 (citing *Kissinger,* 445 U.S. at 157, 100 S.Ct. at 972). Accordingly, we have declined to hold that documents originating in a FOIA-exempted branch, like Congress or the courts, *see* 5 U.S.C. § 551(1), become disclosable simply because they "eventually find their way into

---

**15.** Under its own regulations the Department maintains a "public reference facility" where its own decisions are made available to the public. 28 C.F.R. § 16.2(4) (1987). This facility might well be used to make the requested documents in this case available to Tax Analysts and others.

**16.** While the Justice Department candidly admitted at oral argument that this is "a case that is easier to decide on instincts than on law," we are constrained by the latter. If compliance with the FOIA, despite its provision for the payment of costs, takes on nightmarish qualities for agencies, congressional adjustments to the law are their only answer. *See Getman v. NLRB,* 450 F.2d at 681 (MacKinnon, J., concurring) ("If this situation is to be corrected, it will require an amendment to the Act.").

the hands of an agency covered by the Act." *McGehee*, 697 F.2d at 1107.

Rather, we have held that information originating in a FOIA-exempt entity may only become an "agency record" if the agency's eventual dominion over it includes the discretion to disclose it. Thus, we look for evidence surrounding the creation and transmittal of a document indicating that its creator intended to retain control. If there is none, and the document, though created elsewhere, is presently within the "free disposition of the agency with which [it] resides," it may be deemed an "agency record." *Lykins*, 725 F.2d at 1459 (quoting *Goland v. CIA*, 607 F.2d 339, 347 (D.C.Cir. 1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980)). For example, it has been finally determined that presentence reports, once they are transferred to the Bureau of Prisons, a FOIA agency, and used by that agency in its decisionmaking, are agency records.[17]

The Justice Department maintains that this "control" analysis precludes disclosure of tax court decisions because there is no indication that the courts intended "to relinquish the inherent supervisory power [they have] over [their] own records." Appellee's Brief at 28. The flaw in this argument is that it confuses control over document *content* with control over disposition and dissemination of the document itself. It is axiomatic that courts and Congress—and, for that matter, all agencies—retain ultimate control over the content of the records they create. But court orders, decisions and opinions may be used, duplicated and distributed by other agencies for their own purposes without detracting from the court's basic authority to amend or vacate them.

Here, the courts retain no control over what happens to the copies of the tax decisions they distribute to the Tax Division.[18] *Cf. Goland*, 607 F.2d at 348 (documents not agency records where Congress intended to retain control). Indeed, the Tax Division already provides such documents to Tax Analysts once the government decides to prosecute an appeal. *See supra* note 7.

█ Of course, agency possession and power to disseminate a document are still insufficient by themselves to make it an "agency record." *See Lindsey v. Bureau of Prisons*, 736 F.2d 1462, 1465 (11th Cir.), *vacated*, 469 U.S. 1082 105 S.Ct. 584, 83 L.Ed.2d 695 (1984). Agencies must use or rely on the document to perform agency business, and integrate it into their files, before it may be deemed an "agency record." *See Wolfe v. Department of Health and Human Services*, 711 F.2d 1077, 1081 (D.C.Cir.1983). The Justice Department admits use and reliance on the requested court decisions, reporting that the "opinions and orders may be read and used by some Tax Division employees and attorneys in performing their work as representatives of a party to the litigation, including deciding whether to appeal an adverse decision, deciding litigation positions and strategy and in framing legal arguments." J.A. at 12. Moreover, the opinions and orders are classified and maintained in the official case files of the agency.[19]

█ The Eleventh Circuit has conveniently distilled the essence of Supreme

---

17. *See* Brief for Respondent United States at 13, 15, filed in *Crooker v. U.S. Parole Comm'n*, 469 U.S. 926, 105 S.Ct. 317, 83 L.Ed.2d 255 (1984) (Solicitor General conceding that presentence reports will no longer be claimed not to be "agency records"); *Lykins v. Department of Justice*, 725 F.2d 1455, 1458 (D.C.Cir.1984); *Carson v. Department of Justice*, 631 F.2d 1008, 1010 (D.C.Cir.1980). *See also Durns v. Bureau of Prisons*, 804 F.2d 701 (D.C.Cir.1986) (holding presentence reports exempt from disclosure under 5 U.S.C. § 552(b)(5)). *See generally* Note, *A Control Test for Determining "Agency Record" Status Under the Freedom of Information Act*, 85 Colum.L.Rev. 611, 616–19 (1985).

18. In some rare instances decisions are transmitted by the courts on a confidential basis and these orders and opinions probably would not be considered "agency records." *See supra* note 7.

19. Tax Analysts claims that the Tax Division marks court decisions and orders upon receipt by using a "blocking stamp" that prints the word "record" onto the document. Our conclusion that "agency records" are involved here does not depend, however, on the cosmetics of any such practice.

Court and D.C.Circuit rulings into four relevant considerations for deciding whether an agency has sufficient "control" over a document to make it an "agency record." They are:

 the intent of the document's creator to retain or relinquish control over the records; [2] the ability of the agency to use and dispose of the record as it sees fit; [3] the extent to which agency personnel have read or relied upon the document; and [4] the degree to which the document was integrated into the agency's record system or files.

*Lindsey v. Bureau of Prisons*, 736 F.2d at 1465 (citations omitted). Our prior discussion indicates that the court decisions involved in this case readily pass all four parts of the test. But, by requiring that all four factors be present, the test rebuts the slippery slope argument that the FOIA necessarily covers all public reference documents that may be found in agency libraries or offices, such as treatises, dictionaries and weekly news magazines.[20] Thus not everything in an agency library nor even every court decision received by the Department of Justice is by any means an "agency record" subject to disclosure under the Act. Only those tax decisions requested by Tax Analysts that have been incorporated into Department files, are relied upon by Tax Division attorneys in their work, and remain unencumbered by judicial limitations on dissemination, constitute disclosable "agency records."

### CONCLUSION

We reverse the district court's decision granting the Justice Department's motion to dismiss the complaint, and remand with instructions for the court to enter relief consistent with this opinion.[21]

20. These documents often will not meet the third and fourth agency records criteria mentioned above. Nonetheless, both Congress and the Supreme Court have recognized that, under certain circumstances, materials as public and innocuous as telephone directories may be subject to FOIA disclosure as agency records. *See GTE Sylvania*, 445 U.S. at 385, 100 S.Ct. at 1201 (citing H.R.Rep. No. 1497, 89th Cong., 2d Sess. 5–6 (1966).

21. The district court construed Tax Analysts' complaint as requesting a permanent injunction requiring "automatic access." *See* J.A. at 6–7.

Plaintiff's request is more properly interpreted as a request for declaratory or injunctive relief that simply prohibits the Justice Department's current withholding policy. Our remand, therefore, contemplates only that degree of relief necessary to preclude the Tax Division from denying the weekly requests for access to the court decisions listed in the logs on the grounds asserted in this case. The Department still retains discretion over precisely how it responds to those requests, consistent with the FOIA, its own regulations, and this opinion.