Merrill Burrous CHAMBERLAIN,
Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE and the Federal Bureau
of Investigation, Defendants.

Civil Action No. 94–00567.

United States District Court,
District of Columbia.

March 17, 1997.

Joan Elizabeth O'Dell, Washington, DC, for Merrill Burrous Chamberlain.

Merrill Burrous Chamberlain, Los Lunas, NM, pro se.

Sherri Lanette Evans, U.S. Attorney's Office, Washington, DC, for Dept. of Justice and F.B.I.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on Plaintiff's motion to compel the Federal Bureau of Investigation ("FBI") and the United States Department of Justice ("DOJ"), (collectively, the "Government"), to provide certain data and documents to him pursuant to the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, et seq. Plaintiff is a prisoner proceeding pro se in this matter. Plaintiff alleges that the Government has not conducted an adequate search in response to his FOIA request and challenges the exemptions to the FOIA claimed by the Government. Plaintiff also asks that the government be compelled to: (1) mail to him certain data and documents pertaining to the investigation surrounding his 1989 murder conviction; and (2) make available during the next twelve (12) months for review by an expert designated by him all of the original documents and data pertaining to certain FBI examinations related to his conviction.

## BACKGROUND

On February 21, 1987, Plaintiff shot and killed Officer John Carrillo in Albuquerque, New Mexico. Officer Carrillo was wearing an operational audio tape at the time of the shooting, so the shooting was captured on tape. At trial Plaintiff admitted that he had shot the officer, but claimed that he had acted in self-defense after Officer Carrillo had drawn his pistol and raised his arm to shoot him. The FBI performed extensive analyses of the audio tape to determine the sequence of events at the time of the shooting, and provided evidence at trial. Plaintiff was convicted of the murder of Officer Carrillo on November 7, 1989 and was incarcerated.

Plaintiff originally made his FOIA request, seeking all material related to the investigation of the shooting, in a letter sent to the FBI on November 14, 1991. On December 5, 1991, the FBI acknowledged receipt of Plaintiff's request. On August 19, 1993, the FBI advised Plaintiff that 20 pages of relevant documents had been located and reviewed in response to Plaintiff's FOIA request, and that five pages of responsive material had been released to him. The released material was enclosed with the letter. At the same time, Plaintiff was provided with a detailed description of all items found by the government in this initial search. Plaintiff unsuccessfully appealed the Government's initial response to his FOIA request, seeking the 15 pages that were withheld and also the "laboratory-analyses documents prepared by the Audio–Forensic Section [of the FBI]."

Plaintiff filed his FOIA case in this court on March 21, 1994. On October 24, 1994, the Government filed a motion for summary judgment which the Court took under advisement. Soon after filing its motion, the Government completed an additional search for material responsive to the Plaintiff's FOIA request. In that additional search, the Government located more relevant FOIA material in the FBI's "bulky room" at its headquarters in Washington, D.C. On March 2, 1995, the Government sent Plaintiff 128 more pages of relevant documentation pursuant to his FOIA request, as well as an inventory of all the material related to Plaintiff in the FBI's "bulky room." Included in the inventory was a listing for three packages of 5 1/2″ × 12″ sheets with printouts of laboratory tests. The laboratory tests were analyses of the audio tape of Plaintiff's shooting of Officer Carrillo.

On June 15, 1995, the Court entered a stipulated order dismissing the case, without prejudice, with permission to reopen within six months of that date. Plaintiff moved to reopen the case on December 13, 1995. At a hearing on February 21, 1996, the Government agreed to make certain additional material available to Plaintiff, which he received on July 5, 1996.

On August 14, 1996, Plaintiff again moved to compel the Government to release additional data and documents pursuant to his FOIA request. Plaintiff has now requested: (1) that the Government be required to search further for relevant material, (2) the production of "[x]erox copies of all of the three sets of additional laboratory-test printouts from FBI Examinations 70505032, 80119014, and 80309042 EQZ" (the "Laboratory–Test Printouts"), and (3) that the Government "make available during the next 12 months for review by an expert designated by Plaintiff all of the original data in these three investigations." [1]

The Government is prepared to meet Plaintiff's requests in part. It claims that its search efforts have been adequate under the FOIA, and that certain material remains exempt from disclosure pursuant to Exemption (b)(7)(C). Of the material that is not exempt from disclosure, the Government claims that certain of the additional laboratory-test printouts that Plaintiff seeks cannot be reproduced without damage. The Government has offered to make the additional laboratory-test printouts available for examination by Plaintiff or his designated expert at FBI Headquarters in Washington, D.C.

## ANALYSIS AND DECISION

The issues for the Court to resolve at this time are: (1) whether the government performed an adequate search of its records in response to Plaintiff's FOIA request; (2) whether the Government's claimed exemptions from the FOIA are valid; and (3) whether the Government's proposed method of disclosing the laboratory-test printouts that Plaintiff seeks is permissible under the FOIA.

### I. Adequacy of the Government's Search

Plaintiff claims that he received only five additional laboratory-test printouts on July 5, 1996. He argues that "[r]easonably, the FBI performed many more [tests] than merely

those [they disclosed], because the FBI technicians thoroughly analyzed 'for more than *100 hours* the six (6) seconds just before the first gunshot' " (emphasis in original).

It is well established that "[a]gency affidavits enjoy a presumption of good faith that withstand purely speculative claims about the existence and discoverability of other documents." *Albuquerque Publishing Co. v. United States Department of Justice*, 726 F.Supp. 851, 860 (D.D.C.1989); *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C.Cir.1981); *Goland v. Central Intelligence Agency*, 607 F.2d 339, 355 (D.C.Cir.1978), cert. denied, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). What is more, an agency is only required to conduct a search that is reasonably calculated to discover the requested documents. *Ellis v. United States*, 941 F.Supp. 1068, 1083 (D.Utah 1996). An agency is not required to search every document in the system, *Oglesby*, 920 F.2d at 68, and a search is not considered "unreasonable" simply because it fails to produce all relevant material. *Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C.Cir.1986). In other words, an agency must make a diligent search for the requested documents in the places in which they might be expected to be found. *Smith v. United States*, 1996 WL 696452, at *3 (E.D.La.).

The Government maintains that it has now thoroughly and adequately searched its files in response to Plaintiff's FOIA request and that it has produced or has offered to allow for review all releasable material. FBI Supervisory Special Agent Kevin O'Brien of the Freedom of Information–Privacy Acts Section–Information Resources Division at the agency's Washington, D.C. headquarters, stated in his affidavit that FBI officials in the Albuquerque field office conducted extensive searches for relevant FOIA material related to Plaintiff's case. In addition to those searches, the FBI has now searched extensively for relevant documents in its "bulky

---

1. Plaintiff also requests "Agent O'Brien's second declaration and his attachment, which were apparently filed 06–MAR–95 as Doc # 27" (the "O'Brien Declaration"). The record indicates that the O'Brien Declaration was served on

Plaintiff when it was filed with the Court. Since the Court understands that the O'Brien Declaration is part of the public record of the case, it is available to Plaintiff through the office of the Clerk of the Court.

room" at headquarters, where bulky file materials are stored. The FBI also queried Special Agent Bruce E. Koenig, who had performed the laboratory work with regard to Plaintiff's criminal prosecution, as to whether additional relevant records might be provided.

In sum, the Court finds no reason to question the reasonableness of the Government's search in this case. Plaintiff's assertions as to the existence of records beyond those already located by the Government have no basis. Plaintiff has no evidence that any such records exist, and he has not produced any evidence that suggests any improper motive or deceit on the part of the Government.

■ This Court finds that the Government conducted its searches in good faith and in a fashion which was reasonably calculated to produce responsive material under the FOIA. It has discharged its obligation under the FOIA in a reasonable manner.

## II. Adequacy of the Government's Disclosure

### A. The Government's Exemptions to the FOIA Under (b)(7)(C)

The Government has reviewed Plaintiff's request for release of material pursuant to the FOIA on at least two occasions. While the Government initially claimed exemptions from disclosure under FOIA under Exemptions (b)(2), (b)(7)(C), and (b)(7)(D), it now seeks only that certain material be withheld from Plaintiff under Exemption (b)(7)(C).

■ Exemption (b)(7)(C) protects information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Privacy interests are at stake because the mere mention of an individual's name in a law enforcement file will engender comments and speculation and carry a stigmatizing connotation. *Branch v. FBI*, 658 F.Supp. 204, 209 (D.D.C.1987).

Once a privacy interest has been established, it must be balanced against the public interest, if any, that could be served by disclosure. *Albuquerque Publishing Co. v. Department of Justice*, 726 F.Supp 851, 855 (D.D.C.1989).

■ In this case, the Government withheld information related to (1) government personnel involved in the investigation of Officer Carrillo's murder and, (2) Officer Carrillo's family members. The Government has acted properly to protect the privacy rights of those individuals. Plaintiff has put forth no compelling and countervailing public interest that should override those individuals' privacy rights, and the Court cannot discern such a public interest on the basis of the record before it. The Court finds that the Government has properly withheld information pursuant to exemption (b)(7)(C).

### B. Method of Disclosure

Plaintiff also requests this Court to order the FBI to immediately mail him copies of "all of the three sets of additional laboratory test printouts from FBI Examinations 70505032, 80119014 and 80309042" (the "FBI Examinations"). In particular, it appears that Plaintiff has requested copies of the visicorder charts in connection with the FBI Examinations.[2] The Government claims that the visicorder charts were prepared on a photosensitive paper which would be damaged by exposure to light through photocopying them. Decl. of Special Agent Bruce Eric Koenig. The cost of reproducing the visicorder charts would be at least $4,800.00. Decl. of Special Agent Richard R. Thomas. Plaintiff disputes the Government's contention, citing a 1992 Eastman Kodak Company information sheet (the "Information Sheet") that advises that "copies can be made of the oscillogram [KODAK LINAGRAPH DIRECT Print Paper, Type 2022] on an electrostatic copier with little effect on the contrast of the record."

---

2. The FBI conducted various examinations of the audiotape of Officer Carrillo's shooting, as described above. One of the examinations was performed with a device known as a visicorder, which produces time wave charts which display that change in amplitude over time. The visicorder charts are approximately six inches wide and vary in length from four feet to twenty-five feet.

**296**

The Government challenges the applicability and conclusions of the Information Sheet.[3]

 It is well established that "the purpose of FOIA is to provide a method of informing the public about Government operations and not to benefit private litigants." *Ellis*, 941 F.Supp. at 1078; *Aviation Data Serv. v. Federal Aviation Admin.*, 687 F.2d 1319, 1322 (10th Cir.1982); *Fenster v. Brown*, 617 F.2d 740, 743–44 (D.C.Cir.1979). Moreover, the FOIA does not create a duty on the part of an agency to provide copies of responsive documents—only to make them available for review. *Oglesby v. United States Department of the Army*, 920 F.2d 57 (D.C.Cir.1990).

In *Oglesby*, a writer brought an action against certain government agencies under the FOIA relating to a German general who had served as the chief of an international Nazi spy ring during World War II and who allegedly negotiated a secret agreement with the United States. The court in that case rejected the argument that the National Archives and Records Administration (the "NARA") failed to comply with the FOIA by making responsive documents available in its "research room" instead of sending copies to the requester. *Id.* at 70. The court explained: "NARA did not deny appellant any records; all relevant records were made available to him." *Id.*

This circuit has taken a similar approach to an agency's requirements under the FOIA in the case of *Tax Analysts v. United States Department of Justice*, 845 F.2d 1060 (D.C.Cir.1988), affirmed, 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989). In *Tax Analysts* a magazine publisher brought an action against the Tax Division of the DOJ seeking weekly access to certain court opinions, orders and injunctions. The court held that "an agency need not respond to a FOIA request for copies of documents where the agency itself has provided an alternative form of access," *Id.* at 1065, for example, by making records available in a "reading room." *Id.* at 1067. The court stated further that "[An agency] is not required by statute to mail copies of [records] ... nor even to provide a requester-convenient location for access." *Id.*

 In this case, the Government has offered to make the visicorder charts, as well as all other original and releasable material that might be damaged by photocopying, available for review by the Plaintiff or an expert of his designation. The case law makes clear that the Government's offer meets its obligation under the FOIA. The substantial expense of reproducing the visicorder charts, as well as the possibility that the visicorder charts might be damaged if photocopied, make the Government's proposed form of disclosure even more compelling.

The Court finds that the Government has complied with the requirements of the FOIA by making the visicorder charts from the FBI Examinations, as well as other original data and documents that might be damaged if photocopied, available for review by Plaintiff, or an agent designated by Plaintiff, at the FBI's Headquarters in Washington, D.C.

## CONCLUSION

The Court finds that the Government has provided an adequate search pursuant to Plaintiff's FOIA request. The Government's application of Exemption (b)(7)(C) is proper. The Government's proposal to make the laboratory-test printouts from the FBI Examinations available for review by Plaintiff or an expert of his designation at FBI Headquarters in Washington, D.C. is an appropriate form of disclosure under the FOIA. Plaintiff's motion to compel will be denied.

**3.** The Government points out that the Information Sheet, with a 1992 Copyright notice, may not apply to paper manufactured in or before 1987. The Information Sheet also states that copying will have "little effect" on the paper, but not no effect. The Information Sheet may also pertain only to new visicorder charts, not those that have substantially deteriorated over the nine years applicable here. Finally, even if the visicorder charts could be photocopied without damage, it is unclear how they might be copied in their original form.