KAREN LECRAFT HENDERSON, Circuit Judge,
dissenting:
I believe the district court correctly analyzed the four factors set forth in Tax Analysts to conclude that the IRS does not have sufficient “control” of its copy of its response to the Joint Committee on Taxation (JCT)’s request to make the document[1] diselosable as an “agency record” under FOIA. Tax Analysts v. United States Dep’t of Justice, 845 F.2d 1060, 1069 (D.C.Cir.1988), aff'd on other grounds, 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989). To reach a different conclusion, the majority rejects our four-factor test for agency control, applies, but reinterprets, one of those factors and disturbs our long-settled FOIA analysis. I therefore respectfully dissent.
Relying on our decisions in Goland v. CIA 607 F.2d 339 (D.C.Cir.1978), Holy Spirit Ass’n for the Unification of World Christianity v. CIA, 636 F.2d 838 (D.C.Cir.1981), and Paisley v. CIA, 712 F.2d 686 (D.C.Cir.1983), the majority concludes that, if the document sought under FOIA is created by the agency in response to a congressional request, whether it is an agency record depends solely on whether “Congress has manifested a clear intent to control the document.” Maj. Op. at 597 (emphasis added). But we have estab *606 lished a four-factor test for determining “whether an agency exercises sufficient control over a document to render it an ‘agency record’,” Burka v. United States Dep’t of Health & Human Servs., 87 F.3d 508, 515 (D.C.Cir.1996) (emphasis added), which test is not superseded by, or rendered inapplicable to, documents that respond- to a congressional request. The majority nonetheless contends that its approach is consistent with Tax Analysts’s second factor (“the ability of the agency to use and dispose of the record as it sees fit,” 845 F.2d at 1069) and other circuit precedent. See Maj. Op. at 600-01, 602-OS. As we explained in Paisley, however, “the agency to whom the FOIA request is directed must have exclusive control over the disputed document! ]” in order for it to be an “agency record” subject to FOIA. 712 F.2d at 693 (emphasis added); see also Goland, 607 F.2d at 347 (deciding whether Congress-generated document had “become property subject to the free disposition of the agency with which the document resides” (emphasis added)). Even the majority acknowledges that the agency lacks such “exclusive” control over the document and that the entire document is not subject to the IRS’s “free disposition” inasmuch as it sanctions the nondisclosure of any portion that reveals the JCT’s request. For me, the JCT’s request for confidentiality by itself tilts the second Tax Analysts factor in the IRS’s favor although there is additional record evidence - e.g., the IRS’s FOIA Manual, its course of dealing with the JCT and the JCT chief of staffs declaration - that the IRS lacks sufficient control (and, without a doubt, exclusive control) over its copy of the response to render it an agency record.
Furthermore, we have previously required that “all four factors be present” before we conclude that “an agency has sufficient ‘control’ over a document to make it an ‘agency record.’ ” Tax Analysts, 845 F.2d at 1069 (emphasis added). The majority, relying on one sentence from United States Department of Justice v. Tax Analysts, 492 U.S. 136, 145, 109 S.Ct. 2841, 2848, 106 L.Ed.2d 112 (1989) - a case which has nothing to do with an agency’s copy of a document created solely in response to a confidential request by a congressional committee, the original of which the agency delivered to the committee, which original the committee retains, has not publicly disclosed and to whose disclosure the committee has objected, and continues to object, because disclosure will reveal the substance of the JCT’s confidential request - concludes that the other three factors for determining agency control are superfluous if “the agency creates and possesses the document in the legitimate conduct of its official duties.” Maj. Op. at 603. But the other three factors lead ineluctably to the conclusion that the document in its entirety is not an “agency record.” With regard to the “intent of the document’s creator to retain or relinquish control over the records” (not surprisingly, the first factor), Tax Analysts, 845 F.2d at 1069, it is undisputed that the IRS created the document for the sole purpose of responding to the JCT’s confidential request (which it did by forwarding the original to the JCT) and maintains only a copy. Cf. Holy Spirit, 636 F.2d at 843 (agency-created documents could become “congressional documents because generated in response to congressional inquiries and transferred to Congress” but not if the Congress “failed to retain control over them”).[2] The *607 third factor considers the “extent to which agency personnel have read or relied upon the document.” Tax Analysts, 845 F.2d at 1069. The IRS has not used its copy of the response for any agency purpose, let alone a policy-making one. See Burka v. United States Dep’t of Health & Human Servs., 87 F.3d 508, 515 (D.C.Cir.1996) (data tapes agency records because inter alia agency “read and relied significantly on the information in writing articles and developing agency policies”); see also Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 157, 100 S.Ct. 960, 971, 63 L.Ed.2d 267 (1980) (Kissinger’s notes not agency records because inter alia “they were not used by the [State] Department for any purpose”); Gallant v. NLRB, 26 F.3d 168, 172 (D.C.Cir.1994) (“ ‘[I]n cases where documents are created by an agency employee and located within the agency, use of the document becomes more important in determining the status of the document under FOIA.’ ” (quoting Bureau of Nat’l Affairs, Inc. v. United States Dep’t of Justice, 742 F.2d 1484, 1490 (D.C.Cir.1984))) (internal ellipsis omitted; emphasis in original). The fourth factor looks to the “degree to which the document was integrated into the agency’s record system or files.” Tax Analysts, 845 F.2d at 1069. The IRS keeps its copy in a segregated file devoted solely to IRS correspondence with the JCT. See Kissinger, 445 U.S. at 157, 100 S.Ct. at 971 (Kissinger’s notes not agency records because inter alia “[t]hey never entered the State Department’s files”). The record before us does not reflect why the IRS retains a copy of the response, but the fact that it has not used that copy and keeps it segregated reinforces the conclusion that the document was not created for the agency’s use. FOIA does not require disclosure simply because the IRS practices what it preaches - i.e., it keeps a copy. See Kissinger, 445 U.S. at 157, 100 S.Ct. at 971 (“We simply decline to hold that the physical location of the notes ... renders them ‘agency records.’ ”).[3]
The most serious problem with my colleagues’ holding is that it rewrites FOIA law. The question presented in Goland, Holy Spirit and Paisley was whether the documents at issue were “congressional” or “agency” records. Goland, 607 F.2d at 344-45; Holy Spirit, 636 F.2d at 840; Paisley, 712 F.2d at 692; see 5 U.S.C. § 551(1)(A) (“agency” does not include Congress); see generally Wolfe v. Dep’t of Health & Human Servs., 711 F.2d 1077, 1079 (D.C.Cir.1983) (“A threshold inquiry in any FOIA case is whether the documents requested are in fact ‘agency records.’ ”) In answering that question we did not subdivide any document into part-congressional record and part-agency record. Yet this is precisely what the majority tells the district court to do. See Maj. *608 Op. at 602 (concluding “that only those portions of the response that would reveal the Joint Committee request are congressional documents not subject to FOIA”). There is only one way to “subdivide” under FOIA, however, and that is by first determining that the entire document is an “agency record” and then analyzing whether any portion of that agency record is nonetheless protected from disclosure by one of the nine statutory exemptions listed in 5 U.S.C. § 552(b). See id. (“Any reasonably segregable portion of a[n agency] record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection [listing exemptions].”); United States Dep’t of Justice v. Tax Analysts, 492 U.S. 136, 150-51, 109 S.Ct. 2841, 2850, 106 L.Ed.2d 112 (1989) (“An agency must disclose agency records to any person under [5 U.S.C.] § 552(a), ‘unless they may be withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b).’ ” (quoting United States Dep’t of Justice v. Julian, 486 U.S. 1, 8, 108 S.Ct. 1606, 1610, 100 L.Ed.2d 1 (1988))). The process of redaction, however, does not change the redacted portion into a non-agency record; it simply makes that portion of the agency record not subject to disclosure. Id.-, see Bureau of Nat’l Affairs, 742 F.2d at 1496 (“The inclusion of personal information does not, by itself, take material outside the ambit of FOIA, for personal information can be redacted from the copies of documents disclosed to a FOIA requester.”)[4] What the majority does, in effect, is to carve out a tenth exemption, ie., “justify withholding ... those portions of the [IRS response] that would disclose the [JCT’s] request.” Maj. Op. at 601. It does so, I believe, by confusing redaction based on a FOIA exemption, 5 U.S.C. § 552(b), with nondisclosure due to FOIA’s inapplicability (i.e., a non-agency record). See 5 U.S.C. § 551(1)(A); Maj. Op. at 597 (“The Freedom of Information Act does not cover congressional documents.”). To my knowledge, we have never said that the same document can be part agency record and part non-agency record. See Bureau of Nat’l Affairs, 742 *609 F.2d at 1494 (“The term ‘agency records’ should not be manipulated to avoid the basic structure of ... FOIA: records are presumptively disclosable unless the government can show that one of the enumerated exemptions applies.”). And for good reason - to do so the court would have to redefine “agency record” or, perhaps, the Congress add a tenth exemption to 5 U.S.C. § 552(b).
Of course, by allowing the IRS to keep the substance of the JCT request confidential - and there being nothing in the record to suggest that the IRS response goes beyond the scope of the JCT’s request[5] - the majority necessarily concludes that the IRS must disclose only wre-responsive information. United We Stand America will therefore receive only that information neither the JCT nor it ever requested.

. The majority's discussion of Goland, Holy Spirit and Paisley glosses over the portions of those decisions that emphasize the importance of "the circumstances surrounding the creation of tire documents.” Paisley, 712 F.2d at 694; see Holy Spirit, 636 F.2d at 842- *607 43 ("[T]here is no evidence surrounding the generation of these CIA-created records indicating that .Congress intended that they remain secret.” (emphasis added)); Goland, 607 F.2d at 347 (concluding document was not "agency record” based "both on the circumstances attending the document's generation and the conditions attached to its possession”). Here, those circumstances - the IRS created the document in response to the JCT's confidential request and not for any independent agency purpose - plainly indicate that the IRS’s copy of its response is not an agency record.

. The majority worries that application of our traditional fourfactor test for agency control would keep secret all documents that "would not have been created but for [a] congressional request, that the agency relies on ... for no other purpose, and that ... are kept in separate files.” Maj. Op. at 603. It omits mention of the attribute that even it requires in order to keep a document (or at least parts thereof) secret, namely congressional intent to do so.

. The majority cites Bureau of National Affairs, 742 F.2d at 1496, to support "releasing a redacted version of the response” and “justify withholding as congressional materials solely those portions of the [response] that would disclose the [JCT] request.” Maj. Op. at 601. Let's be clear: the court in BNA nowhere endorses the notion - as the majority does here - that portions of a document can be cut out to allow the court to conclude that the remainder is an "agency record” and therefore subject to FOIA and its exemptions. (Indeed, BNA tells us to "focus on the totality of the circumstances surrounding the creation, maintenance, and use of the document to determine whether the document is [or is not] in fact an 'agency record.' ” 742 F.2d at 1492-93.) Nor does BNA support the notion - as the majority does here - that portions can be redacted from an "agency record” by some means other than by one of FOIA’s nine exemptions.
That the majority looks to BNA and BNA alone to support redacting the document at issue speaks volumes because BNA's redaction language is fully consistent with our traditional FOIA analysis. In BNA, the court considered whether certain appointment materials were agency records under FOIA. The court rejected the idea that the inclusion of personal information in the appointment materials was dispositive because "personal information can be redacted from the copies of documents disclosed to a FOIA requester.” Id. at 1496 (emphasis added). To be sure, the court did not explain why "personal information can be redacted” but the reason is obvious: FOIA expressly provides for the redaction of personal information from agency records. 5 U.S.C. § 552(b)(6) (authorizing redaction of information that "would constitute a clearly unwarranted invasion of personal privacy” from agency record); see, e.g., United States Dep’t of State v. Washington Post Co., 456 U.S. 595, 599-602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982).

. See supra n. 1.